ERNEST KEY v. STATE.

No. A-1673. Opinion Filed October 25, 1913.

(135 Pac. 950.)

1.   APPEAL—Discretionary Ruling. A motion for continuance, on the ground of absent witnesses, is addressed to the discretion of the trial court, and its decision will not be disturbed, unless an abuse of discretion appears.

2.   WITNESSES—Cross-Examination of Accused—Other Crimes. The prosecution in a criminal case has the right to ask the defendant, when he takes the witness stand in his own behalf, whether or not he has been convicted of a particular crime, for the purpose of affecting his credibility.

3. **CONTINUANCE—Motion for Continuance—Sufficiency.** A motion for a continuance in a criminal case was insufficient, where it did not allege that the absent witnesses had not left the state with defendant's consent or procurement, nor state facts showing any probability that they would ever be within the court's jurisdiction, nor state when defendant learned that they had left the state.

*Appeal from District Court, Carter County;*
*S. H. Russell, Judge.*

Ernest Key was convicted of assault with intent to do bodily harm, and appeals. Affirmed.

*Champion & Champion,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is prosecuted from a conviction had in the district court of Carter county upon an information charging the defendant with the crime of assault with intent to kill, alleged to have been committed in said county on or about the 19th day of March, 1911. The verdict was guilty of assault with intent to do bodily harm, leaving the punishment to be fixed by the court.

On the 4th day of October, 1911, the court pronounced judgment and sentenced the defendant to be imprisoned in the state reformatory at Granite for a period of 18 months. To reverse the judgment an appeal was perfected by filing in this court April 1, 1912, a petition in error with case-made.

The evidence tends to show that on the 19th day of March, 1911, the defendant and Will Rose spent a considerable portion of the evening at a bawdyhouse conducted by Nell Jester on the outskirts of Ardmore. The defendant had gone there early in the evening and became boisterous and offensive to Nell Jester; he was ordered to refrain from drinking on her porch; he told her he would kick the door in if it was not opened; and he carried out his threat by kicking the door open. Nell Jester called the police; the defendant was arrested and taken to town by an officer. About 9:30 p. m. he was released upon his promise that he would go to his home and not

go back to Nell Jester's; however, he went back to Nell Jester's and said to her, "Are you going to withdraw that complaint you made against me to-night?" She answered, "No;" and he assaulted her. Less Sigler, a constable, told the defendant he ought not to do that and caught him by the arm. Will Rose, the complaining witness, went back to where Nell Jester, the defendant, and Sigler were and said, "I would not jump on a woman; come on let us go to town." The defendant applied to Rose some epithets and suggested that perhaps Rose desired to take the part of the woman. Rose divested himself of his coat and entered the affray. Defendant and Rose continued the exchange of words and blows until the officer could separate them; two of the defendant's friends taking charge of him. The officer stood between the defendant and Rose after stopping the affray, and the defendant ran around the officer and stuck a knife into Rose's left side. Rose was taken in a cab to a doctor's office, where the wound was dressed. The defendant resisted arrest and ran out the back door. He was arrested, however, by other officers about 50 yards from the bawdyhouse.

The defendant, as a witness in his own behalf, did not deny the stabbing, but claimed that he stabbed Rose during the difficulty and prior to the arrest in self-defense; that he cut Rose because Rose was beating him over the head.

The foregoing is a brief statement of the circumstances of the commission of the crime. The errors assigned will be considered in the order presented.

First. It is contended that the court erred in overruling the defendant's motion for a continuance. The motion was filed after the case was called for trial, and it is therein stated that affiant had caused subpoenas to issue for Bonnie Roberts and Ollie Cody; that the sheriff's return shows that the same were duly served; that said witnesses, if present, would testify that Will Rose struck the defendant with his fist and Nell Jester struck the defendant with a bunch of keys; that at the time the defendant had not made any statement or said anything to Will Rose nor made any effort to do him any injury;

that they hemmed him in a corner and the defendant asked the bystanders to stop the fight; that he did not want to hurt anybody; that Will Rose continued to strike and hit him, and the defendant then drew his knife and struck Rose one time in the side; that this ended the difficulty; and that he is informed and believes that said witnesses have left the state of Oklahoma and that one of them is now in Wichita Falls, Texas, and the other in San Antonio, Tex.

There are several reasons why the court did not err in overruling this motion for a continuance. It is insufficient in that it does not allege that said witnesses did not leave with his consent or procurement, nor does it allege any facts showing any probability that the witnesses would ever be within the jurisdiction of the court. It does not allege when the defendant learned that said witnesses had left the state. We think the motion lacks evidence of good faith and does not show due diligence and was therefore properly overruled.

The defendant, as a witness in his own behalf, was asked on cross-examination:

"Q. You are the same man who struck an Indian down here and he died from the blow, and you pleaded guilty in this court to manslaughter in the second degree? Mr. Champion: We object. The Court: Let him answer. A. Yes, sir."

Counsel argue:

"That a witness may be asked as to a former conviction for a felony, but the court should not have permitted the circumstances of the former charge against this defendant to have been brought before the jury."

Our statute provides (section 5046, Rev. Laws 1910) that a witness may be discredited by showing his conviction of a criminal offense. The defendant had elected to testify as a witness in his own behalf, and, having done so, the county attorney had a right to ask him on cross-examination any question pertaining to the matter at issue or that would go to his credibility as a witness. See *White v. State,* 4 Okla. Cr. 143, 111 Pac. 1010; *Cowan v. State,* 5 Okla. Cr. 313, 114 Pac. 627.

Various criticisms are also made upon the charge of the court, but no exceptions were taken to the instructions at the

time they were given.   In fact, the record shows that the defendant's counsel said at the time, "We have no suggestions to make."   Upon a careful consideration of the record, there seems to be no reason to doubt that the verdict of the jury in this case was entirely in harmony with the interests of justice.

Finding no prejudicial error, the judgment of the lower court is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.