# MADDOX v. State.

No. A-2193.   Opinion Filed July 18, 1916.

(158 Pac. 883.)

1.    **CHANGE OF VENUE—Presumption and Burden of Proof.** The presumption of law is that a defendant can have a fair trial in the county in which the crime is committed, and to establish his right to a change of venue the burden is upon the defendant to overcome such presumption.

2.    **WRIT OF ERROR—Review—Discretion of Trial Court—Change of Venue.** The grant of a change of venue in a criminal case is made by statute discretionary with the trial court, and this court will not reverse the ruling of the trial court denying a change of venue, unless it is made to clearly appear that there has been such an abuse of discretion as to amount practically to a denial of justice.

3.    **JURY — Drawing — Service — Statutory Provision.** A substantial compliance with the forms provided for by law for drawing and serving jurors is sufficient.

4.    **JURY—Challenges—Ground.** A challenge to the panel of jurors can be founded only on a material departure from the forms of law providing for drawing and summoning jurors, or the intentional omission of the sheriff to summon one or more of the jurors drawn; and to entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the illegality or wrong which is the basis of such challenge is such as to have caused the defendant to suffer material prejudice.

5.    **WRIT OF ERROR—Presenting Questions in Trial Court—Exceptions.** Where, in a criminal case, the instructions given the jury by the court are not properly excepted to, such instruction, even though erroneous, will not be considered, except as to fundamental errors embraced therein.

6.    **TRIAL—Instructions—Requests.** The refusal of requested instructions, which are practically covered by the instructions given by the court, to the jury are properly refused, and requested instructions refused and not properly excepted to will not be reviewed.

7.    **JURY—Change of Venue—Selection of Jurors.** Refusal of the court to grant a change of venue, and the overruling of the challenge to the array of jurors, carefully examined, and held to be free from error.

8.    HOMICIDE—Evidence—Weight and Sufficiency. Evidence in a homicide case considered, and held sufficient to sustain a conviction of manslaughter in the first degree.

9.    WRIT OF ERROR—Disposition of Cause—Reduction of Sentence. When the record discloses that substantial justice requires it, this court may modify the judgment rendered by reducing the sentence imposed.

*Error from District Court, Washita County; G. A. Brown, Judge.*

C. W. Maddox was convicted of manslaughter in the first degree, and brings error. Modified and affirmed.

*Burnette, Austin & Holden* and *Brett & Billups,* all of Cordell, and *Bond & Melton,* of Chickasha, for plaintiff in error.

*A. R. Ash,* of Cordell, and *Chas. West* and *C. J. Davenport,* both of Oklahoma City, for the State.

COLLIER, Special Judge. The plaintiff in error, hereafter styled defendant, was charged upon information with the murder of H. Tempt Elam, on the 22d day of August, 1913. Upon his trial he was found guilty of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for 40 years at hard labor. A motion for new trial was duly filed, which was overruled, and on the 24th day of October, 1914, judgment was rendered in pursuance of the verdict. To reverse the said judgment, this appeal was taken by filing in this court on February 20, 1914, a petition in error with case-made.

The defendant was duly arraigned and entered a plea of not guilty, and thereupon made a motion for a change of venue upon the ground that he had been informed against in numerous cases in the county of Washita; that numerous parties were interested in the prosecution and, as complaining witnesses in said cause, that they persistently sought to arouse prejudice against the defendant and had succeeded in doing so to such an extent that the defendant cannot have a fair and impartial trial in Washita county; that it had been sought to convict him in this and other charges for the purpose of gratifying the ill will of the prosecutors, and that

great publicity had been given all of the accusations against the defendant, by publications in the newspapers of wide circulation in the county, and that by wide publicity and biased statements in said newspaper, and that by the bias and prejudice thereby ·engendered and general ill-feeling against the defendant, the defendant cannot have a fair and impartial trial in Washita ·county. To said motion a copy of the respective issues of. August 23, September 4, and September 11, and September 26, 1913, of the Cordell Beacon was attached to and made a part ·of the said petition. Said motion was duly sworn to by the defendant.

In support of the motion for change of venue, the affidavits ·of C. P. Beckwith, John H. Bennett, and C. L. Ferguson were ·attached in each of which affidavits it was averred that the defendant could not have a fair and impartial trial in Washita ·county on account of bias and prejudice existing against him, and that the facts stated in said petition were true. Thereafter ·the state filed counter affidavits of A. R. Sayre, Doc ·Hutchinson, ·and W. T. Hamic, residents of said county, in each of which ·said affidavits it was averred that affiants. believe that said defendant can obtain a fair and impartial trial in Washita county,, ·and that a fair and impartial jury can be obtained to try the ·defendant in said county.

Upon the hearing of the petition for change of venue, the defendant did not offer as witnesses J. H. Bennett, C. L. Fergu·son, and C. P. Beckwith, who signed the supporting affidavits ·attached to the motion for a change of venue, but the defendant ·introduced as witnesses in his behalf on said hearing a Mr. Burks, J. J. Jackson, Walter Askew, J. S. Hatchett, John Lambert, Quincy Bates, Mr. Montgomery, Mr. Glasscock, Mr. Ash·worth, and Mr. Mitchell, which said witnesses resided in different parts of Washita county and who testified as to the material ·questions involved, as follows:

Mr. Burks, Mr. Jackson, Mr. Askew, Mr. Glasscock, and Mr. Mitchell, each testified that he could not say that the defendant

could not get a fair trial in Washita county. Mr. Hatchett and Mr. Lambert each testified that he thought the defendant could have a fair and impartial trial before the jurors of Washita county. Mr. Askew testified that it looked to him that defendant would get a fair trial in Washita county. Mr. Montgomery did not testify as to whether or not the defendant could have a fair and impartial trial in Washita county; that he did not know what the sentiment was. Mr. Bates testified that he was a brother-in-law of Roy Maddox, who is a brother to Charley Maddox, and he would not say from what he knew of the sentiment in the community that a man could not get a jury for any case, so far as that is concerned, if he goes out over the whole county; that it is too much for him; that he supposed there are men in the community that had read the Cordell Beacon, and talked over the 'phone to him and would be safe men; that there are some men that have it in for Charley Maddox, and there are some men that don't know it and don't say much about it. John Ashworth testified that as far as he knew it looked like the defendant ought to get a fair and impartial trial in Washita county.

The state introduced as witnesses on said hearing J. H. Bennett, C. L. Ferguson, C. P. Beckwith, W. H. Griffin, J. W. Blanton, H. G. Walterstedt, L. L. Reeves, Stewart Humbarger, H. K. Thomas, W. D. Killon, J. G. Cone, Charles Hoober, Perry Harrison, A. Sponholtz, and John Hailey, which said witnesses resided in different parts of Washita county and each of whom, except J. H. Bennett, and L. L. Reeves, testified that in his opinion the defendant could secure a fair and impartial trial in Washita county. Mr. Reeves testified that there was no bias or prejudice in his community against the defendant, and that there was sympathy and friendship for defendant's father. Mr. Bennett, the father-in-law of defendant, testified that he did not believe that defendant could have a fair and impartial trial in Washita county.

The foregoing being all the evidence offered for and against the motion for a change of venue, the court overruled the motion,

to which the defendant duly excepted. Whereupon the defendant filed his duly verified, original, and amended challenge to the array of the jurors to serve in said court during the year 1913 upon the following grounds: That the names of the persons selected by the jury commission of Washita county for the year 1913, were selected and drawn from the poll lists as returned from the election of officers and not from the tax roll as required by law; that the proceedings of said jury commission at their meeting in January, 1913, was not made a part of the records of this court and certified to by said jury commission as prescribed by law; the unlawful and unauthorized acts of the clerk of this court in opening the box containing the list of the jurors and not recording the names of those in the jury box at the time said box was opened; that the clerk of this court drew the names of the jurors to serve in this term of court without having said sheriff or one of his deputies present and certifying to said proceedings according to law; that the clerk of this court delegated authority to summons jurors to the sheriff of this court without authority of law; that there was no meeting of the jury commission in the month of July, 1913, as prescribed by law, at which a list of jurors was prepared for the October, 1913, term of said court; that by reason of the facts herein stated the defendant has suffered material prejudice, and that the list returned as aforesaid consists of a large number of prejudiced jurors on said list and are drawn from districts where there is great animosity to this defendant, said prejudice and bias arising from an organized effort to convict this defendant without regard to his legal rights.

To the said challenge of the array of jurors, the county attorney filed his duly verified answer, denying each of the allegations contained in said challenge save and except that there was no meeting of the jury commissioners of Washita county in the month of July, 1913, and alleged the facts to be that the said jury commission was not called to meet and did not meet at said time for the reason that no necessity existed therefor. The defendant offered evidence upon the hearing of

said challenge to the array of jurors, but the only evidence in support of any of the allegations as to the irregularity of the drawing and serving of said jurors, or in connection therewith, is that the names of a part of said jurors were taken from the election returns and not from the tax rolls. The only one of the jury commissioners examined as a witness testified that he took the names from the election returns; that he personally knew the persons whose names were selected, and that they were taxpayers; that, at the time of selecting said names of jurors, the jury commission had the tax rolls in the office with them and resorted to the election returns to locate the residence of the several persons selected; that the respective jury commissioners selected the names from their respective districts, and that he was unable to say whether or not the other jury commissioners selected the names selected by them from the tax rolls; that the respective jury commissioners furnished the names from their respective districts to make up the panel attached.

There was no evidence whatever that the names of the persons to serve as jurors thus selected from the poll books were, except in one instance, different from the names that would have been selected had the names been taken from the tax books, and there is no evidence whatever that, in the drawing and the serving of said jurors, or anything in connection therewith, the defendant suffered material prejudice. Brown Hatchett, one of the persons on the panel of jurors attacked, a witness for the defendant, testified that he was not on the tax roll in 1912, but had property subject to taxation.

The court overruled the challenge to the array of jurors, to which the defendant duly excepted. On the examination of the defendant as a witness he was required to answer whether or not he, defendant, had ever been convicted of a felony, to which he duly excepted, and answered in the affirmative.

An abstract of the evidence heard on the trial of the cause is not set out in any one of the briefs of the defendant, and in neither one of the briefs of defendant is it argued, or was it

insisted in the oral argument of the case, that the evidence was not sufficient to sustain the conviction had in this case; therefore it is unnecessary to set out an abridgment of the voluminous evidence heard on the trial of the case.

On the hearing of the motion for a new trial, evidence was offered to show that an automobile with some persons in it drove up in front of the courthouse while the jury were standing near the courthouse door; that it was dark and that the jury did not recognize who the parties were that were in the automobile; that some one of the jurors asked who they were and the bailiff replied that they would find out later; that some of the jurors recognized Dock Hutchinson and John Thompson, officers of the court; that it was never discussed by the jury as to who the parties were in the automobile; that the jury did not learn that Tom Athey and his wife were under arrest; that the jurors were taken to church once; that while there they did not hear a word in reference to any prosecution or any remarks about the enforcement of the law or anything like that; that they did not read the news while on the jury.

Upon the conclusion of the evidence, the court instructed the jury as to the law in the cause, said instructions being numbered from 1 to 28 inclusive. And thereupon the defendant duly excepted in open court to each and all of said instructions; said exceptions being taken as aforesaid in open court to each instruction separately from 1 to 28 inclusive, and exceptions duly allowed by the court. But there are no exceptions separately taken to either one of said instructions as provided by law. The defendant requested instructions numbered respectively 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11. The first eight requested instructions were refused for the reason, assigned by the court, that they were substantially given in the court's charge to the jury. The refusal to give requested instructions 10 and 11 are not excepted to. Florence Athey into the presence of the jury while they were

Defendant predicates the reversal of this cause upon many assignments of error, but for a proper review of this cause we deem it only necessary to review the following assignments: (1)

That the court erred in overruling defendant's application for a change of venue; (2) the court erred in overruling the defendant's challenge to the array of jurors; (7) that the evidence is not sufficient to sustain the verdict of guilty of manslaughter in the first degree as found by the jury in said cause; (9) that the verdict in said cause was influenced by passion and prejudice against the defendant; (10) misconduct on the part of the sheriff and bailiffs in charge of the jury in bringing Tom Athey and under arrest on a charge of conspiracy with defendant to murder the deceased, H. Tempt Elam, while the jury was considering the verdict in this cause, the said Tom Athey and Florence Athey having been witnesses in behalf of the defendant in the trial of this cause; (11) misconduct of the jury whereby the defendant was prejudiced in his rights; (13) the court erred in permitting the state, over the objection of the defendant, to ask defendant if he had ever been convicted of a felony and requiring the defendant to answer said question; (15) that the court erred in refusing defendant's requested instructions Nos. 1 to 11, inclusive; (16) that the court erred in giving instructions Nos. 11, 12, 13, 14, 16, 17, 18, 26, and 27, which were excepted to by the defendant; that the court erred in overruling defendant's motion for a new trial. These several assignments of error will be considered in their order.

(1, 2, 7). The gounds set up in the application for a change of venue were that prejudice in the minds of the inhabitants of Washita county, because of the frequent prosecutions instituted against the defendant, produced prejudice against him, and that the newspaper that had a large circulation in the county had published prejudicial accounts of the tragedy and by reason of such publication the minds of the inhabitants of the county were prejudiced against the defendant. We have carefully considered the publications complained of which are attached to and made a part of the application for change of venue, and are unable to say that such publications were of such a nature as to inflame the minds of the inhabitants of the county against the defendant

and to militate against the defendant having a fair and impartial trial in the county, especially in view of the fact that such publications were made more than a year prior to the time of the trial.

The evidence produced on the hearing of the motion (an abridgment of which is hereinbefore set out) fails to furnish for the defendant that measure of evidence to entitle him to favorable action on his petition for change of venue, while, on the other hand, the evidence on the part of the state, and by a part of the evidence offered by defendant, shows conclusively that, under the well-settled rules of this court, the court did not err in denying the change of venue.

"The presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed, and, if this is not true, the burden is upon the defendant who seeks a change of venue to establish his right thereto." *Tegeler v. State,* 9 Okla. Cr. 138, 130 Pac. 1164; *Johnson v. State,* 1 Okl. Cr. 322, 97 Pac. 1059, 18 Ann. Cas. 300; *Turner v. State,* 4 Okl. Cr. 164, 111 Pac. 988.

In the celebrated and well-considered case of *Gentry v. State,* 11 Okl. Cr. 355, 146 Pac. 719, Presiding Judge Doyle says:

"It has been the uniform holding of this court that the granting of a change of venue is a matter resting within the sound discretion of the trial court, and, unless it clearly appears that there is an abuse of such discretion, this court will not disturb the decision of the trial court in granting the change of venue" (citing many authorities in support thereof).

This holding of Judge Doyle is fully supported by the exhaustive opinion of Chief Justice Angellotti of the Supreme Court of California, in the case of *People v. Kromphold,* 157 Pac. 599, rendered May 1, 1916, which said opinion is amply fortified by authorities. Certainly it cannot be said that in the instant case the trial judge abused his discretion in refusing the change of venue.

(3, 4). The only serious question presented by the attack upon the array of the jurors is as to the manner of their selection

by the jury commission. In part, the names of the jurors were taken from the election records instead of from the tax rolls. Section 5841 and 5842, R. L. 1910, are as follows:

"Section 5841. A challenge to the panel is an objection made to all the trial jurors returned, and may be taken by either party.

"Section 5842. A challenge to the panel can be founded only on a material departure from the forms prescribed by law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice."

Section 3701, R. L. 1910, in part provides: A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, summoning, or impaneling the same resulted in depriving a party litigant of some substantial right.

There is no evidence in the record from which it can be said that the names of the jurors of the array differed from those who would have been upon the array had the names of the jurors been taken from the tax books, except as to one juror, who was a tax payer, and whose name did not appear upon the tax list. There is no claim that the action of the jury commission was tainted with fraud or that said commissioners who drew the panel were in any way prejudiced against the defendant.

The pivotal consideration of section 5842, supra, is that the acts upon which the challenge of the array is based must be such as that the defendant has suffered material prejudice thereby. If the same persons constituted the panel as would have constituted the panel if the tax rolls had been resorted to to obtain their names, we are at a loss to see how the defendant suffered material prejudice from the jury commission having selected the names from the election records.

In *Ran Wood v. State,* 3 Okla. Cr. 553, 107 Pac. 937, it is held:

"The challenge to a petit jury panel must be predicated on facts from which defendant has suffered material prejudice."

"A challenge to the panel can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury or on the intentional omission of the sheriff to summon one or more of the jurors drawn from which the defendant has suffered material prejudice." *Wadsworth v. State*, 9 Okla. Cr. 84, 130 Pac. 808.

When an objection to the panel is purely technical and does not affect the substantial rights of the defendant, such challenge should be overruled. *Malignon v. Territory*, 8 Okla. 439, 58 Pac. 505.

"A challenge to the panel can only be founded upon a material departure from the directions of the law in respect to the drawing and returning of the jury, or the intentional misconduct of the sheriff in the matter of summoning the same, and it must be shown in the challenge that the defendant has suffered some material prejudice thereby.

"A substantial compliance with the law as to the manner in which jurors shall be selected and summoned is all that is required." *Wadsworth v. State*, 9 Okl. Cr. 84, 130 Pac. 808.

In the well considered case of *Watson v. State*, 9 Okla. Cr. 1, 130 Pac. 816, Judge Doyle says:

"We think that, before the defendant can avail himself of any irregularities on a challenge to the panel, he must show intentional omission on the part of the jury commissioners from which he has suffered material prejudice. * * * The fact that the jury commissioners failed to strictly follow the provisions of the jury law is not in itself a sufficient ground to sustain a challenge to the panel. It must be shown that such irregularities were prejudicial to the substantial rights of the defendant."

It does not appear from the evidence that a part of the names upon the panel were not taken from the tax rolls and not from the election returns; and hence the entire panel does not come within the objection made in the motion. In *Stuard v. State*, 6 Okla. Cr. 94, 116 Pac. 204, it is held: "A motion to quash the jury panel is properly overruled when any portion of the panel does not come within the objection made in the motion."

In the absence of evidence to the contrary, the law presuming that an officer properly discharges his duty, it must be presumed that the other commissioners than the one who testified in the case selected the names selected by them on the panel, from their respective districts from the tax rolls of the county and under the authority of *Stuard v. State, supra,* the challenge to the array of jurors was without merit. We are unable to see that the trial court committed prejudicial error in overruling the challenge to the array of jurors.

(8). While the evidence had on the merits of the case is not abstracted in the briefs, we have carefully read and weighed the entire evidence in the case, and are satisfied that the evidence is amply sufficient to support the verdict rendered, especially in view of the undisputed fact that the deceased was shot in the back, that the ball passed through his body, on through his arm, severing the main artery thereof, from which blood must have instantly flowed; that the first sign of blood found at the place of the tragedy was 23 steps from the place where the deceased's horse was hitched, and the remarkable statement of the defendant that the smoke of the first shot was such that he could not see the deceased clearly, coupled with the fact of the shadow cast upon the evidence of the defendant by reason of his conviction of a felony, and the statement of the deceased that the defendant shot him in the back. Indeed, in the brief, and the able supplemental brief on behalf of the defendant, and in the oral argument, it is not seriously contended that the evidence is not sufficient to sustain the judgment rendered.

· In *Culpepper v. State,* 4 Okla. Cr. 103, 111 Pac. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668, it is said:

"Our statutes provide that 'a defendant in a criminal action is presumed to be innocent until the contrary is proved.' Section 6828, Snyder's Comp. L. Okla. It is also provided that: 'Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was

justifiable or excusable.' Section 6854, Snyder's Comp. L. Okla. Under the section first quoted, the defendant goes into the trial presumed to be innocent, and this presumption remains with him until the contrary is proved. This fixes the burden of proof in the first instance, and designates the party whose duty it is to produce evidence and effect persuasion—the party upon whom lies at first the risk of non-persuasion. It is but another way of stating the maxims, presumitur pro reo, and actore non probante reus absolvitur. The presumption is not evidence of any kind, nor does it partake of the nature of evidence. * * * What is presumed, so long as the presumption remains, need not be proved; and, as to the matter presumed, the burden is on him against whom the presumption exists."

Upon this same subject, Mr. Wigmore says:

"The 'presumption of innocence,' is a term which has been the subject of two special fallacies, namely (1) that it is a genuine addition to the number of presumptions, and (2) that it is per se evidence. As to the first of those fallacies, it is to be noticed that the 'presumption of innocence' is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i. e., the rule that it is for the prosecution to adduce evidence, and to produce persuasion beyond a reasonable doubt. As to this latter part, the measure of persuasion, the 'presumption' says nothing. As to the former part, the 'presumption' implies what the other rule says, namely, that the accused (like every other person on whom the burden of proof does not lie) may remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion, i. e., to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it. * * * "

We are of the opinion that the evidence is sufficient to sustain the verdict of the jury, of the guilt of the defendant beyond all reasonable doubt, of the offense of manslaughter in the first degree. There is no evidence whatever to sustain the assignments of error, that the verdict in said cause was influenced by prejudice and bias against the defendant, or that there was misconduct on the part of the sheriff and bailiff in charge of the jury in bringing Tom Athey and Florence Athey into the presence of the jury while they were under arrest on a charge of conspiracy with the

defendant to murder the deceased. 'The evidence on the motion for a new trial clearly shows that no knowledge came to the jury of the arrest of said Tom Athey and Florence Athey, or that they were charged with conspiracy in connection with the defendant for the murder of the deceased, and consequently said assignments of error are without merit. There is no evidence to support the assignment of error, "that the jury was guilty of misconduct whereby defendant was prejudiced in his rights."

When a defendant takes the stand in his own behalf he is placed upon the plane of any other witness, and for the purpose of showing his credibility may be asked as to whether or not he has been convicted of a felony, and therefore the court did not err in requiring the defendant to answer such question.

"The state, in a criminal case, has a right to ask the defendant as a witness in his own behalf, upon cross-examination, whether or not he had been convicted of a crime, for the purpose of affecting his credibility." *Busby v. State*, 10 Okla. Cr. 343, 136 Pac. 598.

"The prosecution in a criminal case has the right to ask the defendant, when he takes the witness stand in his own behalf, whether or not he has been convicted of a particular crime, for the purpose of affecting his credibility." *Key v. State*, 10 Okla. Cr. 206, 135 Pac. 950.

(5) After instructions were read to the jury, the defendant attempted to except thereto as follows:

"The defendant duly excepted in open court to each and all of said instructions. Said exception being taken as aforesaid, in open court to each instruction separately, from 1 to 28, inclusive, and the exceptions duly allowed by the court. Such attempted saving of the exceptions cannot be considered."

In the case of *Starr v. State*, 9 Okla. Cr. 210, 131 Pac. 542, this court held that such objections do not properly reserve exceptions to instructions, the court using the following language:

"Counsel for appellant complains in his brief of a number of alleged errors in the instructions of the court to the jury. We cannot consider these objections, because proper exceptions were not reserved to the instructions at the trial. The record shows that, after the instructions were read to the jury, counsel for

appellant stated that he excepted to each and every instruction given by the court, and to each and every paragraph thereof. This only amounts to a general exception which we cannot consider for any purpose whatever. When counsel desire to except to any instruction, the attention of the court should be directly called to the instruction objected to, in order that the court may be given an opportunity to correct any error which it may contain. If this is not done, errors in the instructions will be waived, unless they are fundamental. See *Summers v. State,* 7 Okla. Cr. 11, 120 Pac. 1031. We find no fundamental error in the instructions of the court."

In *Hess v. State,* 9 Okla. Cr. 516, loc. cit. 520 (132 Pac. 505), this court, speaking through Judge Furman, said:

" 'It has been repeatedly held that where counsel desire to reserve an exception to an instruction they must point out the particular paragraph of the instructions objected to and state the grounds of the objection, so that the trial court may have an opportunity to correct the error complained of. A general exception will not be considered for a single moment, as it is unfair to the judge and the opposing counsel. See *Boutcher v. State,* 4 Okla. Cr. 576, 111 Pac. 1006; *Braziel v. State,* 5 Okla. Cr. 540, 115 Pac. 618. If this court were to tolerate practices of this kind the result would be to encourage carelessness upon the part of counsel.' "

In *Birdwell v United States,* 10 Okla. Cr. 159, 135 Pac. 445, the record shows that, after the instructions were read, the following occurred:

"Comes now the defendant and excepts to each and every instruction given by the court to the jury from No. 1 to 22, inclusive."

In the syllabus of said case, the court says:

"A general exception to instructions given upon the trial of a case will not be considered. Counsel should point out to the trial court the particular instruction to which they desire to except, in order that the court may have an opportunity to correct the error therein, if any."

There being no proper exceptions taken to the charge of the court to the jury, the only review of instructions given that we can make is to see that the instructions are not only erroneous, but fundamentally wrong.

" 'Fundamental errors,' which will be considered whether assigned or not, are those which go to the foundation of the case, or which take from the defendant a right which was essential to his defense." *Rea v. State,* 3 Okla. Cr. 281, 105 Pac. 386, 106 Pac. 982.

An erroneous instruction, unless fundamentally wrong, will not be ground for reversal unless excepted to at the time of the trial as directed by law. *Anderson v. State,* 7 Okla. Cr. 491, 124 Pac. 86; *Hayes v. State,* 4 Okla. 377, 111 Pac. 1020; *Boutcher v. State,* 4 Okla. Cr. 576, 111 Pac. 1006; *Ryan v. State,* 8 Okla. Cr. 624, 129 Pac. 685; *Dooling v. State,* 3 Okla. Cr. 491, 108 Pac. 982; *Prue v. Territory,* 1 Okla. Cr. 508, 99 Pac. 157; *Sparks. v. Territory,* 16 Okla. 127, 83 Pac. 712; *Heatley v. Territory,* 15 Okla. 72, 78 Pac. 79.

We have carefully examined the instructions of the court and are unable to find a fundamental error in either one of the instructions given by the court to the jury. It is admitted in the supplemental brief filed by defendant that exceptions were not properly saved to instructions of the court to the jury, but it is earnestly insisted that fundamental errors are in some of said instructions, and particularly in the instruction defining a reasonable doubt. We have carefully examined the instructions of the court defining a reasonable doubt and are unable to agree with the learned counsel of the defense, filing the supplemental brief, that the definition of a reasonable doubt as defined in said instructions is not only erroneous but contains fundamental error.

The instructions defining a reasonable doubt in the case of *Gransden v. State,* filed in February, 1916, not yet officially reported, 158 Pac. 157, which is identical with the definition given in the instant case, is held should be condemned, "but notwithstanding said instruction is erroneous, we are of opinion that the error is not fundamental." Again, in the case of *Harris v. State,* 10 Okla. Cr. 417, 137 Pac. 365, 139 Pac. 846, the case most relied up for the reversal of this cause, upon the erroneous defining of a reasonable doubt, in which said case the definition of a reasonable doubt is in the exact language in the instant case. The late lamented Judge Furman, says:

"In this case, as no exception was reserved to the instruction, and as defendant may waive his constitutional rights, we cannot do otherwise than hold that the instruction was harmless error."

(6) We have carefully compared the instructions requested with the instructions given by the court to the jury, and we are impressed that all of said requested instructions that were refused, except 10 and 11, are substantially covered by the instructions given by the court. The refusal of the court to give requested instructions 10 and 11 is not excepted to and therefore cannot be reviewed by us. It follows that the court did not err in overruling the motion for a new trial.

While we feel that justice has been done in this case, so far as the conviction of the defendant is concerned for the offense of manslaughter in the first degree, and that he has been ably and earnestly defended by learned attorneys in both the trial and this court, we think that there are mitigating circumstances in the case, some of which are that a few days prior to the homicide the deceased threatened the life of defendant, which threats were communicated to him prior to the homicide; that the deceased had, on several occasions, expressed a desire of "shooting it out" with defendant, and that on the morning of the homicide the justice of the peace who was estimating the damages under the herd law between the parties, where both the defendant and deceased were present, had to admonish the deceased to return to his pocket a knife which deceased had taken from his pocket and opened the blade with an expression indicating great indignation against the defendant. And in connection with said mitigating circumstances must be considered the statement, made at the oral argument of the case by the county attorney who prosecuted the case in the trial court, which statement was approved by the Assistant Attorney General, who appeared in this court on the oral argument of said case, that "while he (county attorney) earnestly insisted that the conviction should stand, that a reduction of the sentence was not opposed." And in addition to said mitigating circumstances, and the indirect recommendation of the prosecuting attorney, considering the age of defendant as

shown by the evidence, 40 years, and that a sentence of 40 years, considering the average life in penal institutions, would probably en:c~ed the life of the defendant, and remembering that "judgment should be tempered with mercy," it is hereby ordered, under authority conferred by section 6003, R. L. 1910, that the judgment be modified, and that the imprisonment imposed upon appellant be reduced from 40 to 10 years and that the judgment, as modified, be affirmed.

· DOYLE, P. J., and ARMSTRONG, J., concur.

NOTE: One of the Judges of this Court, HON. RUTHERFORD BRETT, having been counsel in the case, being thereby disqualified as one of the Judges to hear and determine the same, and this fact having been duly certified to Governor R. L. Williams, he thereupon appointed HON. WILLIAM A. COLLIER as Special Judge of the Criminal Court of Appeals for the trial and determination of this case. Judge Collier, having duly qualified as Special Judge, the case was submitted upon oral argument and briefs by both parties: