# T. M. YARBROUGH v. STATE.

No. A-2269.    Opinion Filed February 6, 1917.

(162 Pac. 678.)

1.    **HOMICIDE—Appeal—Harmless Error—Evidence.**    Where evidence introduced by the state is a mere conclusion or opinion of the witness, **held** that, when its effect is to directly corroborate and sustain the contention and theory of the defendant, he is not prejudiced and cannot complain.

Held, further, that where a defendant, charged with murder, pleads insanity, accident, and self-defense, it is competent for the state to prove that immediately after the homicide he armed himself and left the vicinity; for one who is so insane as to be unconscious of the character and quality of his act is not conscious of guilt, and one who kills his fellow man by accident, or in defense of his own person, is not conscious of guilt, and the fact that the accused immediately armed himself and retreated from the scene of the homicide was a circumstance to be considered by the jury in passing upon the merits of his respective pleas.

2.    **TRIAL—Jury—Admonition.**    Where the court in the midst of a trial, and before the case had been submitted to the jury, permitted the jury, during a recess, to separate, saying to them, "Gentlemen, under the previous admonitions you may be excused," **held,** first, that before the case is finally submitted to the jury it is discretionary with the judge whether they be permitted to separate or be kept in the charge of a bailiff; and, second, that if defendant desired that a bailiff be in charge of the jury, or that the court specifically repeat the statutory admonition, he should have requested it, but, having acquiesced by silence, he will not now be heard to complain.

3.    **TRIAL—Defenses—Instructions.**    A court should not instruct upon an element of crime not in the case, since such would only tend to confuse the jury.

The court should also refuse to instruct the jury to the effect that the pleas tendered by the defendant are not inconsistent. The defendant has a right to enter as many pleas as he sees fit, whether consistent or inconsistent; and the judge should instruct the jury upon each defense which is supported by competent evidence, but should not tell the jury whether they are consistent or inconsistent.

*Error from District Court, Atoka County;*
*Jesse M. Hatchett, Judge.*

T. M. Yarbrough was convicted of manslaughter in the first degree, and he brings error. Affirmed.

*Linebaugh Bros. & Pinson,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J. The plaintiff in error in this case, T. M. Yarbrough, who will be referred to as defendant, was prosecuted in the district court of Atoka county for murder, and convicted of manslaughter in the first degree, and sentenced to the penitentiary for a term of 15 years.

The difficulty occurred in a horse lot at Edgar's Mill, and the material facts, as developed by the state, are that the defendant was employed by Edgar, who owned and operated a sawmill; that Will Landrum, the deceased, was also in the employ of Edgar, as foreman at this mill; that on the day of the homicide the defendant complained that Edgar had not paid him according to contract, and used some abusive language with reference to Edgar and his business methods. In response to this language Landrum stated that Edgar was away, but would pay him as soon as he returned, and assured defendant that he would get all that was due him. This seemed to further enrage defendant, and he referred to Edgar as "a damn thief," and further said, "Anybody that will take up for him is no better than he is." Landrum replied by calling the defendant "a damn liar."

Defendant seized an ax and started toward Landrum; Landrum retreated, and started to go out the lot gate. The defendant dropped the ax, and intercepted Landrum at the gate, and told him that if he went out the gate he would kill him. Landrum stepped back from the

gate, and the defendant pulled a pistol; and Landrum called to the bystanders, saying, "Boys, don't let him shoot me." One of the bystanders called to the defendant and said, "Don't shoot him." About that time Landrum made an effort to seize the pistol, but one of the state's witnesses, who claimed to be in position to see what occurred, testified that he did not reach the gun. Defendant then threw his left arm around Landrum's neck, and fired the fatal shot; Landrum sank to his knees, and defendant then went to his own house, which was only a short distance away, procured a shotgun, and left the premises. The state's witnesses testified that Landrum had nothing in his hands during the difficulty.

The defendant pleaded insanity, accident, and self-defense, and offered evidence in support of each of these defenses. He testified that he and his family had had nothing to eat for two days, that his children were crying for bread, and that his distress produced temporary insanity; that he did not intend to injure the deceased, but deceased struck at him twice with an open knife, and each time slashed his coat, which was offered in evidence; that he drew the pistol to strike deceased with it, but that deceased seized it, and in the scuffle that followed it was accidentally discharged and inflicted the fatal wound. The state offered rebuttal evidence, as above indicated, to show that Landrum did not reach the gun when he attempted to seize it, and had nothing in his hands during the difficulty, and in addition offered the merchant who had furnished defendant with groceries to show that defendant's credit was still good at his store and he had always furnished defendant all the groceries he called for.

As to the facts in this case, we will say that the jury
that heard the evidence, and saw the witnesses upon the
stand, has passed upon them; and the defendant in his
brief admits the evidence is sufficient to justify and sus-
tain a verdict of manslaughter in the first degree, but
insists that there were errors of law which occurred dur-
ing the progress of the trial that entitle him to a re-
versal.

1. He first complains because the court permitted
one witness for the state to testify that he "thought de-
ceased grabbed the pistol." But if this was a mere opinion
or conclusion of the witness, and if it was error to admit
it, we think the defendant was not prejudiced by it, for
its effect was to corroborate the defendant's theory that
deceased actually seized the gun, in contradistinction to
the state's theory that deceased never had his hand upon
the gun, and consequently it could not have been dis-
charged by accident.

He also complains because the 12-year-old son of
deceased was permitted to testify that defendant, after
the difficulty, went to his house and got a shotgun and
left the premises, insisting that this fact was not ma-
terial, and that the little boy was only introduced as a
witness to create sympathy; but we think it was ma-
terial in rebuttal of defendant's plea of insanity, acci-
dent, and self-defense, for one who is so insane as to
be unconscious of the nature or quality of his act also has
no consciousness of guilt, and one who kills his fellow
man by accident or in defense of his own person does
not have a consciousness of guilt, and the fact that the
defendant immediately armed himself, and retreated from
the scene of the homicide, would at least be a circumstance

to be considered by the jury in passing upon the merits of his respective pleas.

2. The next complaint is that during the progress of the trial the jury, during a recess, were allowed to separate, and leave the courtroom without being in charge of a bailiff, and without being given the specific instruction not to talk about or consider the case, as provided by section 5900, Rev. Laws 1910. But the record shows this was before the case was finally submitted to the jury; and that when a recess was about to be taken the court said:

"Mr. Sheriff, just clear the way there and let the jury go without a bailiff. Gentlemen, under the previous admonitions of the court you may be excused. Just step out this way."

And the record further shows that no objection was made to this, and no request that the jury be kept in charge of a bailiff, or that the instruction be made more specific. Under section 5899, Rev. Laws 1910, before the case is submitted to the jury, it is discretionary with the judge whether the jury be permitted to separate or be kept in charge of a bailiff. The language of the statute is plain, yet this question has been specifically passed upon in *Armstrong v. State,* 2 Okla. Cr. 567, 103 Pac. 658, 24 L. R. A. (N. S.) 776; *Burns v. State,* 8 Okla. Cr. 554, 129 Pac. 657, and *Weatherholt v. State,* 9 Okla. Cr. 161, 131 Pac. 185. And if the defendant felt the court should at that time have a bailiff with the jury, or repeat again the full statutory admonition, he should have requested it. But since he did not request it, but acquiesced by his silence, he will not now be heard to complain.

3. It is contended that the court erred in the instructions given, and also erred in refusing to give numerous requested instructions. Without going into details, we will say we think the instructions given by the court fairly presented the law of the case, and that the gist of all requested instructions which were applicable to the facts of the case was embodied in the instructions given.

The defendant, however, requested an instruction on manslaughter in the second degree; but there was no evidence that would even remotely suggest manslaughter in the second degree, that element was not in the case, and the court properly refused to confuse the jury by instructing upon it.

The defendant also requested the court to instruct the jury that the defenses interposed by the defendant of self-defense, accidental shooting, and temporary insanity were not inconsistent defenses. And he complains more particularly of the refusal of the court to give this instruction, because the county attorney in his argument to the jury said in part:

"Let this sink into your minds: If he killed him in self-defense, why did he plead accident and insanity; if he killed him by accident, why did he plead insanity and self-defense; and if he was insane, why in the name of God did he plead accident and self-defense?"

The court properly permitted each of these defenses to go to the jury, gave clear and specific instructions upon each of them, but properly refused to instruct upon or argue their consistency to the jury. That was the duty of counsel for defendant, and the state had the right to attack either or all of the pleas as futile under the evidence, or as inconsistent with each other, in the

light of the evidence, and it was the province of the jury under the evidence to pass upon the merit of each and all of these pleas. And the court should not have taken that question from the jury, by a specific instruction to the effect that they were not inconsistent; for whether they were consistent or inconsistent depended upon the facts and circumstances surrounding the homicide, and was a question for the jury. The defendant has a right to enter as many pleas as he sees fit, whether consistent or inconsistent, and the judge should instruct the jury upon each defense which is supported by competent evidence, but he should not tell the jury whether they are consistent or inconsistent.

The defendant complains of some other minor matters; but we have carefully examined the record and briefs, and think upon the whole the defendant was awarded a fair trial.

The judgment is therefore affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.