## ED SANDERS v. STATE.

No. A-7063.    Opinion Filed March 8, 1930.
(287 Pac. 842.)

300

John L. Ward and L. O. Todd, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Tulsa county of the crime of robbery with firearms, and

was sentenced to serve a term of ten years in the penitentiary at McAlester. The record was perfected, and the case appealed to this court.

The testimony in substance shows that J. D. Perryman was in charge of a filling station owned by the Southland Gasoline Company, in West Tulsa, on the 23d day of September, 1927; that the defendant came to the filling station and demanded Perryman and a young boy at the station with him to "stick 'em up"; that the man who demanded them to stick 'em up took $52 in cash from Perryman, and then compelled Perryman and the crippled boy who was with him at the time to go a short distance from the filling station with him, when he turned around and marched them back to a Chevrolet car of Perryman's. During this time the defendant had his gun on Perryman and the boy; when they got back to the car, he had them get in, and, pointing the gun at Perryman, had him drive him some distance down through some woods, and then made Perryman and the boy get out, and told them he would leave the car at the post office; the defendant drove off, taking with him the $52 in money and the Chevrolet car he had taken from Perryman.

The witness J. D. Perryman positively identified the defendant as being the person who robbed him of his money and car. The testimony further shows that shortly thereafter the defendant was arrested near Seminole, and at the time of his arrest had in his possession the automobile which had been taken from the witness Perryman. Perryman was called to Seminole, and there identified the defendant as being the man who held him up and robbed him. At the time the defendant was taken into custody in Seminole he did not give the name of Ed Sanders. When confronted with the fact that the officers were looking for the car, the defendant stated that a strange man had

loaned him the car to go and get some beer; he stated he did not know the name of the stranger, or where he lived.

The testimony on behalf of the defendant was in the nature of an alibi; some four or five witnesses testifying that on the day of the alleged robbery at Tulsa the defendant was in and around Seminole and Earlsboro, and at such a great distance from Tulsa that he could not have possibly been in Tulsa at the time of the robbery from the time he was seen in and near Seminole and Earlsboro. Most of the witnesses testifying that the defendant was in Seminole county on the date of the robbery in Tulsa, Tulsa county, Okla., were relatives of the young man; one was a young lady sweetheart.

The record shows that Perryman positively identified the defendant as being the man who held him up and took his money and car; the witness was with the defendant several minutes at the filling station and in the car which he was compelled to drive until he got down in the woods, where the defendant made Perryman and the crippled boy get out and leave him.

The defendant's testimony denies that he was in Tulsa at the time the robbery took place, and states he was in Seminole county, which is shown to be about 125 or 130 miles from Tulsa, and his relatives and sweetheart testify to the same facts as does the defendant.

The defendant has assigned several errors alleged to have been committed by the court in the trial of his case. The first error assigned by the defendant is that the court erred in overruling his demurrer to the information. A study of the information shows that the allegations in the information are in ordinary and concise language, charging the defendant with robbing J. D. Perryman of $52 in cash and one Chevrolet roadster automobile of the value

of $375, and by taking, stealing, and carrying away said money and automobile by means of force and putting the defendant in fear by the use of firearms.

It is urged by the defendant that his demurrer to the information should have been sustained; the defendant insisting that the information is duplicitous, charging robbery and larceny under all the separate statutes of the state of Oklahoma. With this contention we cannot agree. The information does charge that the defendant took from him $52 in cash at the filling station, and then when he came outside he forced the witness and a crippled boy to get in the car of the prosecuting witness and drive him a short distance away, and made them get out, and drove on with the defendant's car. The taking of the money and the car being one continuous transaction, the allegations as to the taking by the defendant of the articles do not make the information duplicitous, as the information only attempts to charge one offense, that is, of robbery with firearms of the $52 in money and the Chevrolet car.

In Hill v. State, 19 Okla. Cr. 406, 200 Pac. 253, the question discussed by the defendant in this case was discussed at considerable length by the court. In that opinion, in the first paragraph of the syllabus, the court said:

"To constitute robbery the taking must be either directly from the person or immediate presence and against the will of the party robbed, and must be by force or a previous putting in fear. It is the previous violence or intimidation that distinguishes robbery from larceny. The information in this case charged the taking of money from the person of another by means of force and fear, brought about by pointing a revolver and threatening to shoot if resisted, followed by the allegation, 'Said defendants did then and there wrongfully, willfully, unlawfully, forcibly, violently, and feloniously take, steal, and carry away.' Held, to sufficiently charge the crime of robbery,

and, the words 'steal and carry away' being mere surplus-age, the information was not bad for duplicity."

The court did not err in overruling defendant's demurrer to the information.

It is next urged by the defendant that the court erred in selecting and impaneling the jury. The defendant in his second assignment contends that the jury was improperly selected, drawn, and impaneled, and that by reason thereof the defendant's substantive and substantial rights were impaired in this cause.

The record discloses that considerable testimony was taken upon the question of the selection of the trial jury. This question has been before the courts of the different states in many different forms, in all of which cases the courts have held that the important thing to be considered is the question, Were the rights of the defendant impaired by the manner in which the jury was drawn, selected, and sworn, and did the manner of selecting, impaneling, and swearing the jury deprive the defendant of a fair and impartial jury to sit in the trial of his case? If the record discloses that, by reason of the method of selecting the trial jury, the defendant was deprived of any right guaranteed him under the Constitution and laws of this state, then the panel should have been quashed, and the court should have ordered a new jury drawn. A substantial compliance with the law in drawing, selecting, and impaneling a jury is sufficient.

In Young v. State, 41 Okla. Cr. 226, 271 Pac. 426, this court in the second paragraph of the syllabus said:

"The statutes of this state providing for the impaneling of jurors in criminal cases, is not in all particulars mandatory. A substantial compliance will be sufficient where the deviation is not material and has not prevented

an accused from having a fair and impartial jury, selected by lot from the entire panel."

The case of Young v. State, supra, was cited with approval in the case of Michael et al. v. State, 42 Okla. Cr. 124, 274 Pac. 900.

In Maddox v. State, 12 Okla. Cr. 462, 158 Pac. 883, this court in the body of the opinion said:

"A challenge to the panel can only be founded upon a material departure from the directions of the law in respect to the drawing and returning of the jury, or the intentional misconduct of the sheriff in the matter of summoning the same, and it must be shown in the challenge that the defendant has suffered some material prejudice thereby."

There is no showing in the record in this case that the jurors selected were biased or prejudiced against the defendant, or that the defendant's rights were prejudiced by reason of the jury that was selected to try this case. The court did not err in overruling the challenge of the defendant to the entire panel of the jury. From the grounds stated in the challenge it cannot be construed to be a good challenge of the entire panel of the petit jurors, for the reason that most of the jurors of the regular panel were in the box at the time of the challenge, and that a number of them had been called in the box to be examined on their voir dire. The challenge to be good must be founded only on the statutory grounds that the defendant has suffered material prejudice. Wadsworth v. State, 9 Okla. Cr. 84, 130 Pac. 808; Maddox v. State, 12 Okla. Cr. 462, 158 Pac. 883.

The challenge of the panel was without merit, and it was not error for the court to overrule the same.

It is urged by the defendant that the county attorney in his remarks went outside of the record, and the remarks made by him were highly prejudicial to the substantial rights of the defendant. The remarks of the county attorney complained of are as follows:

"The Court: Let the record show that the county attorney has just told the jury in substance that it was an easy matter for anyone in a case of this kind to go to Earlsboro, Cromwell, or some other place, and obtain there four or five witnesses who would testify to anything.

"Mr. Ward: That is part of what he said, and he stated further, your Honor, that the relatives in a case like that, you could depend upon the relatives and friends of this defendant to swear anything to get him out.

"The Court: All right, put that in the record.

"Mr. Ward: We object to that argument and ask the court at this time to admonish the jury to disregard it for any purpose whatsoever, and ask that the county attorney be * * * highly prejudicial, not within the testimony, not within any legitimate argument of the testimony.

"The Court: Overruled.

"Mr. Ward: Exceptions.

"Mr. Wallace: You men are not interested in technicalities or anything of that kind, not from the time you were called into the box up to this time. You are not interested in those little things, but what you want to know are the facts. Now, then, I believe under this evidence just as much as I am now standing here that that fellow there held up and robbed J. D. Perryman as sure as the sun is shining now. There is no question about that in my mind—none on earth under this evidence. Men, if we are going to stop fellows from doing things like this, when there is a fellow you could not be mistaken about, what are we going to do? Are we going to turn him loose? Yes, these friends and relatives on a trumped-up defense,

that is all it is, and the worst trumped-up one I have ever seen, and so his brother and his sister and his uncle and his sweetheart and his people—I say you can go anywhere from here to Cromwell, Oklahoma, you can find fellows, if they think they are four or five against one—he will swear hell is an icehouse anywhere—

"Mr. Ward: We object to that argument—

"Mr. Wallace: I say—

"The Court: Wait a minute.

"Mr. Ward: It is not legitimate argument based on the facts in the case.

"The Court: Overruled.

"Mr. Ward: Exceptions.

"Mr. Wallace: They will swear anything. Men, this is a serious proposition. They had the sergeant of the police—I don't know whether you introduced this or not —these reports. He did not testify. Take that report. Said this fellow gave his age as 26 and that he weighed 150 pounds—

"Mr. Ward: No, 135 pounds.

"Mr. Wallace: I mean the record showed—was it 135?

"Mr. Ward: Yes, sir.

"Mr. Wallace: 135, and the records as I remember showed he weighed 150. I believe he says he weighed no—

"Mr. Ward: 154.

"Mr. Wallace: Did he not tell what he weighed when he was put in jail? No, he did not. He tells what he weighs now, but did not tell what he weighed when he was put in there, after having been fattened up."

The foregoing statements of the county attorney in his argument to the jury, as disclosed by the record, seem to be comments upon the testimony and on the

witnesses who were brought from Earlsboro or Cromwell to testify to the defendant's presence in that section of Seminole county at the time of the alleged robbery; other parts of his argument went to the fact that under the evidence, beyond a reasonable doubt, the defendant was guilty. The entire argument of the county attorney is not incorporated in the record, but only excerpts from the argument. This court has held in several cases that, where such state of facts exists and the trial court overrules the objection to such argument, this court will not reverse the case on the alleged errors, unless the argument complained of constitutes a violation of some constitutional or statutory right of the defendant; that under the circumstances the presumption will be indulged on appeal that the trial judge ruled that such argument was permissible as reply argument, and the burden is on the defendant to show error in the ruling of the trial court. Ussaery v. State, 22 Okla. Cr. 397, 212 Pac. 137.

The error complained of is without sufficient merit to warrant a reversal of this case.

It is next urged by the defendant that the trial court erred in permitting the jurors to separate and go to their homes and in overruling the defendant's motion to dismiss, and in overruling the defendant's motion to tender proof in support of said motion to dismiss for the reason in said motion set out. The defendant in support of his contention cites Reed v. State, 5 Okla. Cr. 365, 114 Pac. 1114, and Cosby v. State, 30 Okla. Cr. 294, 236 Pac. 51. From an examination of the cases cited by the defendant we hold they are not in point, and that the facts in the cases cited were different to the facts in this case. In this case the jurors were permitted to separate and go to their homes; they were admonished by the court not to read the papers concerning the question to be submitted

to them, and to permit no one to talk to them about the case. As shown by the record, no objection to the jurors separating was entered by the defendant at the time the court permitted the separation, nor is there any direct allegation in the defendant's motion to dismiss the jury that the defendant had been injured by the separation of the jury; the only allegation being that in all possibility certain things had occurred of which the defendant desired to make proof. Yarbrough v. State, 13 Okla. Cr. 140, 162 Pac. 678; Forester v. State, 36 Okla. Cr. 111, 252 Pac. 861.

As to whether or not the jury should be kept together before the case has been submitted to the jury is within the sound discretion of the trial court. In the case of Wright v. State, 12 Okla. Cr. 443, 158 Pac. 290, this court held that, where the jury was permitted to separate to allow a juror to attend the funeral of a member of his family, and the defendant made no objection to and took no exceptions, he could not complain on appeal.

Section 2716, C. O. S. 1921, authorized the judge of the court in his discretion to permit the jurors to separate at any time before the case is finally submitted to them, even in capital cases. Weatherholt v. State, 9 Okla. Cr. 161, 132 Pac. 185; Yarbrough v. State, 13 Okla. Cr. 140, 162 Pac. 678. We hold this assignment is without merit.

It is next urged by the defendant that the trial court erred in overruling defendant's motion to withdraw from the consideration of the jury all testimony with reference to search and seizure, and disclosure of things found in the automobile driven by the defendant upon the seizure secured without a search warrant. The testimony in this case shows that the officers had been advised of the larceny of the Chevrolet car and robbery, and they were out on the road looking for them. They stopped the defendant,

who was driving the car described, and took him into custody; he was found in possession of a stolen car, and therefore the testimony in this case was admissible against him. The record in this case clearly shows that the car the defendant was found in possession of was the car belonging to the prosecuting witness Perryman, and no one disputes the fact that the car was the car of the prosecuting witness Perryman; therefore the argument of the defendant as to the search and seizure was properly overruled by the court.

It is next contended by the defendant that the lower court erred in giving instruction No. 7 to the jury, which was on the question of an alibi. We have carefully considered this instruction in connection with the statement of the court in Stout v. State, 41 Okla. Cr. 42, 270 Pac. 90, in which instruction the language used is in the same language as the instruction in this case. The court there held the instruction was not prejudicially erroneous. Defendant has cited several authorities supporting his contention, all of which decisions of this court involve the instructions of an alibi, but the instruction in this case was more favorable to the defendant than the instructions in the language contended by the defendant should have been given.

The defendant also complains of instructions 4, 5, and 6, given by the court. After an examination of the instructions 4, 5, and 6, it is the opinion of the court that the instructions properly stated the law as applied to the facts in this case, and the court did not err in giving the said instructions to the jury.

We have considered all of the errors it is deemed necessary to consider in order to arrive at a proper decision in this case. Finding no fundamental or prejudi-

cial errors in the record, the judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.