# JOHNSON v. STATE.

HOMICIDE — EVIDENCE — WITNESS — RES GESTÆ — DECLARATION
DURING FLIGHT — CONSTITUTIONAL PRIVILEGE — CROSS-EX-
AMINATION — INSTRUCTIONS.

1.   The trial court denied the request of the defense that a wit-
ness, whose name was indorsed on the information, be placed
on the stand by the prosecution for cross-examination, said
witness not having been called by the prosecution. *Held* not
to be error, the witness not having been an eyewitness to the
transaction, and having been afterward called and examined
by the defense, and no actual prejudice to the defendant by
reason of the failure of the State to call him, being shown.

2.   In a homicide case any evidence tending to show flight on
the part of the accused is material.

3.   Declarations of defendant during flight in regard to his
movements, his intentions, and his reasons for leaving the
place where the homicide occurred are admissible in evidence.

4.   A declaration is admissible as part of the res gestæ, if it
springs spontaneously out of the principal fact, is in direct
connection with it, and is illustrative and explanatory of it,
although it may be narrative in form, and may be separated
from the principal fact by a lapse of time more or less con-
siderable.

5.   Almost immediately after being shot, deceased was carried
into the house by defendant and others; and within a half
hour or an hour after the shooting, deceased stated, in re-
sponse to a question as to how it occurred, "Johnson (defend-
ant) shot me, but he did not intend to do it." *Held*, that the
declaration was admissible as part of the res gestæ; and that it
may fairly be deemed a continuation of a remark made by
deceased at the moment he was shot, viz: "Oh, Johnson!
You have shot me." *Held further*, that the exclusion of the
evidence was error.

6.   The shooting being confessed, and the sole issue involved
on a charge of murder, being the intent of defendant, to show
the friendly relations between deceased and defendant, it was

offered on behalf of defendant to prove that two days prior to the shooting, defendant had taken the part of deceased, and protected him from an assault by a third party. *Held* admissible, and its exclusion error.

7.   An accused who testifies in his own behalf, can not complain, on error, that he was required to answer questions on cross-examination in violation of his constitutional privilege to refuse to testify against himself, where he did not at the time claim such privilege.

8.   The cross-examination of a defendant upon collateral matters should be limited to such questions as may test the credibility of the witness; and when the facts sought to be elicited serve in no way to effectuate that object, but the necessary result is simply to prejudice the defendant in the minds of the jury, the limit is exceeded.

9.   The defendant testified in his own behalf as to the events at the time of, and prior to, the homicide. On cross-examination he was questioned, and required to answer, over objection, in regard to his movements for a number of days afterward. He was required to state the circumstances of his alleged flight, and that during a part of the time he was associated with two persons who killed a man while he was so associated with them. *Held*, error, since the evidence as to the character and conduct of his said associates was not relevant to the case on trial, and could not be otherwise than prejudicial to him.

10.   In a murder case, a conclusive presumption can not arise upon any material question until all the evidence bearing on it is considered, and the proof found to be beyond a reasonable doubt. Hence an instruction is erroneous which states that where a person points and fires a pistol at a vital point of another's body, if the latter is killed, the former can not be heard to say that he did not intend to kill him, the intention to kill being conclusively presumed.

11.   It is proper, however, to inform a jury that from certain acts a certain intent may be inferred. It is a logical inference of a fact in question from certain other facts established by the evidence. The inference may be strong or weak when such acts are considered in connection with all the other facts in the case.

[Decided November 4, 1899.]

ERROR to the District Court, Sweetwater County, HON. DAVID H. CRAIG, Judge.

Patrick L. Johnson was informed against for the crime of murder, and was convicted of murder in the second degree. He prosecuted error.

*E. E. Enterline, D. G. Thomas,* and *D. A. Reavill,* for plaintiff in error.

It was error to deny the motion of defendant below to require the prosecution to call a witness whose name was indorsed on the information, who had been subpœnaed by the prosecution and was present at the trial. (People v. Etter, 45 N. W., 1109; People v. Dietz, 49 id., 296; People v. Kenyon, 93 Mich., 19; Thompson v. State, 17 S. W., 448; Ruyens v. State, 25 id., 786; Mayes v. State, 24 id., 421; People v. Oliver, 4 Utah, 460).

The declaration of the deceased that defendant did not intend to shoot him was admissible as part of the res gestæ. (Underhill on Cr. Ev., 120, 121; Lewis v. State, 29 Tex. App., 201; State v. Arnold, 47 S. C., 9; State v. Talbert, 19 S. E., 852; Fulcher v. State, 28 Tex. App., 465; Pierson v. State, 21 Tex., 14; Smith v. State, 21 Tex. App., 277; Ingram v. State, 43 S. W., 518; Darter v. State, 44 id., 850; Benson v. State, 43 id., 527; Pilcher v. State, 32 Tex. Cr., 557; State v. Martin, 124 Mo., 514; State v. Rollins, 113 N. C., 722; Von Pollnitz v. State, 92 Ga., 16; Com. v. Werntz, 161 Pa. St., 591; State v. Euzebe, 7 So., 784; People v. Callaghan, 4 Utah, 49; Ter. v. Davis, 10 Pac., 359; State v. Brown, 28 Or., 147.)

The evidence offered to show kind acts toward deceased on the part of defendant was admissible to rebut malice. (Brannigan v. People, 3 Utah, 488.)

It was error to permit the prosecution to cross-examine defendant respecting matters not alluded to in chief, and to call out thereby the fact that one with whom defendant associated, after the homicide, killed a man. The constitutional right of defendant was also violated. (Const. Art. 1, Sec. 11; 1 Greenleaf's Ev., 445; 1 Whart. Ev..

529; 1 Rice Ev., 586; Rap. on Witnesses, 246; Cooley's Const. Lim., 386; 14 Pet., 461; 87 Fed., 329; 66 Cal., 602; 96 id., 171; 75 id., 415; 81 id., 113; 117 id., 624; 104 id., 462; 108 id., 54; 116 id., 503; 99 id., 440; 33 Pac., 890; 39 id., 12; 43 id., 520; 12 Or., 96; 14 id., 300; 105 Ind., 469; 65 N. W., 149; id., 157; 42 Pac., 828; 76 Mo., 320; 75 id., 171; 89 id., 129; 2 S. W., 407; 41 id., 218; 45 id., 1102; 11 Utah, 241; 42 S. W., 385; 11 So., 424; 28 Fla., 511; 4 So., 486.)

The instruction that the intent to kill is to be conclusively presumed from the pointing and firing of a pistol at a vital point of another's body is erroneous. (Underhill Cr. Ev., 381; 2 Thomp. Tr., 2356, 2357; Clark's Cr. L., 46; 1 Bish. New Cr. Pro., 1099; Trumble v. Ter., 3 Wyo., 280; Brannigan v. People, 3 Utah, 488; State v. Ernest, 56 Kan., 31; People v. McNamara, 94 Cal., 509; Murphy v. People, 9 Colo., 448; State v. Crafton, 56 N. W., 257; People v. Sweeney, 55 Mich., 586; 11 S. E., 620.)

*J. A. Van Orsdel*, Attorney General, and *John H. Chiles*, for the State.

The prosecution was not required to produce the witness whose name was indorsed on the information. People v. Robertson, 67 Cal., 646; State v. Payne, 10 Wash., 545; State v. Russell, 13 Mont., 164; State v. Barrett, 54 Pac., 807; State v. Rolla, 55 Pac., 523; People v. Robinson, 6 Utah, 101; Clark Crim. Proc., 548; 17 N. W., 446; 38 N. W., 525; 2 N. E., 775; Abb. Cr. Brief, 187; 6 Park. Cr., 398; 96 Ill., 91; 55 N. W., 753; 61 N. W., 246; 14 S. E., 331.

The declarations of defendant during flight were properly admitted. (Underhill Cr. Ev., 115–119; Bish. New Cr. Pro., 1250.)

The statement of deceased was properly rejected. It constituted no part of the res gestæ. People v. Ah Lee, 60 Cal., 85; State v. Raven, 115 Mo., 419; State v. Daugherty, 17 Nev., 376; Jones v. State, 71 Ind., 66;

Hall v. State, 132 Ind., 317; Stephenson v. State, 110 Ind., 358; Parker v. State, 136 Ind., 284; State v. Carey, 56 Kan., 84; Turner v. State, 89 Tenn., 547; Hall v. State, 48 Ga., 607; State v. Carlton, 48 Vt., 636; State v. Pomeroy, 25 Kan., 349; Kirby v. Commonwealth, 77 Va., 681; State v. Arnold, 47 S. C., 9; 21 Enc. Law, 111; Underhill Crim. Ev., 120; Wharton Crim. Ev., 263.

It seems the true rule is, regarding the cross-examination of the accused, that in the absence of a statute limiting the right of cross-examination, that if the accused take the witness stand in his own behalf, although not obliged to do so, he is subject to the same examination as any other witness in the case. (State v. Pfeferle, 36 Kan., 90; Hanoff v. State, 37 Oh. St., 178; Brandon v. People, 42 N. Y., 265; La Beau v. People, 34 N. Y., 223; State v. Bacon, 9 Pac., 393; Com. v. Bonner, 97 Mass., 387; Driscoll v. People, 47 Mich., 413; Storm v. U. S., 94 U. S., 76; State v. Ward, 49 Conn., 429; Com. v. Lyden, 113 Mass., 452; Hamilton v. People, 29 Mich., 182; Thomas v. State, 2 N. E., 808; Com. v. Nicholas, 114 Mass., 285; Heldt v. State, 30 N. W. Rep., 626; People v. Clark, 15 L. R. A., 662 and note; State v. Griswold, 67 Conn., 290; State v. Pancoast, 5 N. D., 514.. 8 Ency. Pl. & Pr., 147; Underhill Cr. Ev., Sec., 60; Wharton Cr. Ev., Secs. 432–435.)

The instruction complained of is sustained by Underhill on Ev., Sec. 234.

CORN, JUSTICE.

An information was filed against the defendant Johnson, charging him with the murder of William Strang. The killing took place early in the morning at a ranch where the defendant, the deceased, and several other young men had stayed over night. The defense was that several of those present at the ranch had been amusing themselves by shooting near each other with their pistols, but so as to miss. That the shot which caused the death

of the deceased was fired in this way, and was aimed some distance to his right. That he slipped in the snow and thus came within range of the bullet and was killed, the defendant, who fired the shot, not intending it. There was a verdict of murder in the second degree and the defendant was sentenced to the penitentiary for life. The several errors assigned will be considered as far as practicable in their order.

1. A witness whose name was indorsed upon the information, and who was present in court, was not called by the prosecution. At the close of the evidence for the State the defense demanded that he be placed upon the stand for cross-examination by them. We do not think the court erred in denying the request. The witness was in court and was afterward examined by the defense. He was not an eye-witness to the transaction, and no actual prejudice to the defendant by reason of the failure of the State to call him is pointed out. This question was quite fully discussed in Ross v. The State, decided at the last term of this court.

2. Together with other evidence offered by the prosecution to show the flight of the accused, a witness testified that two days after the shooting the defendant came to his camp about two o'clock in the afternoon and stayed overnight. That while there he stated that a man by the name of Bennett had gone around by Brown's Park to get some fresh horses, and that when he returned defendant would get a fresh horse, go to Rawlins, and go home to Iowa and leave the country. Upon being asked if defendant stated why he was going to leave the country the witness replied that the defendant said they were making it pretty hot for him in Brown's Park, and that he did not like to be seen there after the horses. The witness stating upon cross-examination that defendant said nothing about the shooting of Strang, and that he did not understand the latter remark to have any connection with this case, defendant's counsel asked that it be stricken out as irrelevant and immaterial, and the refusal

of the court to strike it out is assigned as error. Any evidence tending to show flight was material. It was shown that defendant left the ranch where the shooting took place about three hours and a half after it occurred, and before the death of Strang. The witness stated that when defendant came to his camp, he was traveling, riding one horse and leading another. These facts certainly had some tendency to show flight, and his declarations, in regard to his movements, his intentions and his reasons for leaving, made at the same time, were verbal acts constituting a part of the same transaction. As such they were admissible in evidence. That the testimony was likely to prejudice the defendant in the eyes of the jury can not be denied, for they might be influenced by the consideration that however doubtful the case upon trial might be, a verdict of guilty would in any event result in placing the defendant upon the right side of the penitentiary. But this fact can not be deemed sufficient reason for the rejection of relevant testimony, not otherwise subject to any objection. The court would no doubt, upon a request to that effect, have protected the defendant, as far as possible under the circumstances, by an instruction that the evidence should have no weight with the jury except as it might tend to show the flight of the defendant on account of the alleged crime for which he was upon trial.

3. Almost immediately after being shot the deceased was carried into the house by the defendant and others. The defense offered to prove that, a short time after being carried in, the deceased, upon being asked how it occurred, said, "Johnson shot me, but he did not intend to do it." The witnesses say that they do not know how long after the shooting this statement was made; that it may have been half an hour or an hour: that it was not long. The evidence was excluded as not being a part of the res gestæ.

The question is confessed to be one of much difficulty, and the cases are very numerous and not very harmo-

nious.  The early rule was very strict that the declaration must be precisely contemporaneous with the main transaction charged as an offense.  Later it has been held that the element of time is not always material, that no general rule can be stated, but that each case must stand upon its own facts.  But it seems to be generally held, if the statement is mere narration, wholly unconnected with the principal fact, it is inadmissible.  Upon the other hand, if it springs spontaneously out of the principal fact, is in direct connection with it, and is illustrative and explanatory of it, the declaration should be admitted although it may be narrative in form, and although it may be separated from the principal fact by a lapse of time more or less considerable.

. We refer to a few of the cases as. illustrating the circumstances under which it has been deemed proper to admit the evidence.  In State v. Martin, 124 Mo., 529, the deceased was stabbed on the street at night.  The witness stated that he heard him cry "police;" but supposing he was drunk walked across the street from him.  But seeing him fall and hearing him say, "I am fainting," ran across the street to him.  The wounded man was then carried into a saloon across the street from where he fell.  At the suggestion of some one the witness ran a block and a half for a physician, who put his head out of the window and said he could not come.  The witness ran back and reported that the doctor could not come.  In a moment or so some one asked the wounded man, "Do you know who did it?" and he answered, "Yes; two negroes, one a little yellow fellow."  No one having stated in his presence who did it, the court held that it was properly admitted as a part of the res gestæ, and the court say the statement might well be considered a part of the sentences he uttered immediately after the fatal stab had been inflicted.  That it was not a mere narrative unsupported by the principal fact, but was in direct connection with it and illustrative and explanatory of it.  That no sensible man would reject such evidence in his

own affairs. And numerous cases are citea by the court illustrating the propriety of the decision.

In Com. v. Mc Pike, 3 Cush., 181, the defendant was indicted for stabbing and killing his wife. The deceased had run from the room where it occurred to another room in the same house, a story above. On being admitted she had asked that a priest and a physician be called, saying she was killed. A witness immediately started for a physician. Another witness, attracted by the cries of the deceased, and going toward the room met the first witness coming out. Upon being cautioned not to go in, that the defendant would kill him, he went for a watchman, and coming back went immediately to the room. The deceased then told him that the defendant had stabbed her, and what she wanted done if she died. It was held that the evidence was properly admitted as part of the res gestæ.

In Insurance Co. v. Mosley, 8 Wall., 403, the contest between the parties was upon the question of fact whether the deceased died from the effects of an accidental fall down stairs in the night, or from natural causes. The witness testified that the deceased left his bed between twelve and and one o'clock; that when he came back, he said he had fallen down the back stairs and almost killed himself; that he had hit the back part of his head in falling down stairs; * * * he complained of his head and appeared to be in great pain. The court in that case say that to bring such declarations within the principle, generally, they must be contemporaneous with the main fact to which they relate, but that the rule is by no means of universal application. And the evidence was held to have been properly received.

Hanover R. R. v. Coyle, 55 Pa. St., was a suit by a peddler on account of injuries to himself and wagon from being struck by a train. The court say, "We can not say that the declaration of the engineer was no part of the res gestæ. It was made at the time of the accident in view of goods strewn along the road by the breaking

up of the boxes; and seems to have grown directly out of, and immediately after, the happening of the fact. The negligence complained of being that of the engineer himself, we can not say that his declarations, made upon the spot, at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself." Although the declarations were evidently made after the accident, and when the transaction was entirely past, the court speak of them as made "at the time of the accident;" and with entire accuracy, we think, for they were made under the direct and immediate influence of the transaction.

In Lewis v. State, 29 Tex., App. 201, declarations of the deceased made a half hour to an hour and a half after she was wounded were held under the circumstances of that case, to be res gestæ and admissible. And the court say: "In order to constitute declarations a part of the res gestæ it is not necessary that they were precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tend to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence."

In Fulcher v. State, 28 Tex. App., 471, statements of the deceased as to the circumstances of the shooting, made about half an hour afterward, were held to be admissible as res gestæ.

In Com. v. Werntz, 161 Pa. St., 597, the deceased had been carried from the shed where he was wounded, to a barber shop on the other side of the street, and across a lot, and there made certain statements to the surgeon who dressed his wounds, as to the identity of his assailant, which were excluded as too remote by the trial court.

The supreme court in holding the exclusion to be error, say: "The interval of time from the stabbing and the distance of the barber shop from the shed, do not appear with exactness, nor are they material, for it is appar-

ent that they were not great and that the continuity of the event was not broken. The declarations were by the party best informed and most interested, and were made at a time and place, to a person, and under circumstances which effectually exclude the presumption that they were the result of premeditation and design."

As illustrating that the element of time is not held to be controlling, in a New Jersey case, the deceased was assaulted at night in Camden, and received wounds from which he afterward died. Statements of the deceased made that afternoon in Philadelphia, that he intended going to Camden that evening in company with the defendant, were held to be admissible as part of the res gestæ.

Hunter v. State, 40 N. J. L., 495.

In Sloan v. The State, 47 Mo., 604, the defendant offered to prove that while the surgeons were dressing the wounds of Moore, for whose murder he was being tried, and immediately after the shooting took place, Moore said, "Sloan was not in fault, that he had drawn on the difficulty by attacking him, and that if his pistol had not hung when he went to draw it, he would have killed him." It was held that the evidence was improperly rejected by the trial court, being admissible as part of the res gestæ. Starkie, Vol. 1, page 65, in discussing the rule that excludes hearsay, says: "The principle does not extend to the exclusion of any of what may be termed real or natural facts and circumstances in any way connected with the transaction and from which any inference as to the truth of the disputed fact can reasonably be made." And Lord Denman is quoted as saying in Rouch v. Great Western R. R. Co., 1 Q. B., 60: "The principle of admission is, that the declarations are pars res gestæ, and therefore it has been contended that they must be contemporaneous with it; but this has been decided not to be necessary upon good grounds; for the nature and strength of the connection with the act are the material things to be looked to; and, although concur-

rence of time can not but be always material evidence to show the connection, yet it is by no means essential;" and further, "that if there be connecting circumstances a declaration may, even at a month's interval, form part of the whole res gestæ." And Wharton says (Cr. Evi., Sec. 263): "The distinguishing feature of declarations of this class is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. * * * Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." And he explains, "that immediateness is tested by closeness, not of time, but by casual relation."

In the case now under consideration, the declaration is so naturally and closely associated with the principal act that the connection could not be clearer if it had been made at the moment of the shooting. There is nothing in the evidence which gives countenance to the idea that the statement was an afterthought, that it was influenced by any third person, or by any ulterior motive. Indeed, the circumstances effectually preclude such idea. The deceased was suffering from the pain of a mortal wound, and would not be likely to be inventing excuses for his slayer. Moreover, at the moment he was shot, his first exclamation was addressed to the defendant himself, as if informing him of a fact which he did not intend and would not know: "O, Johnson, you have shot me." The statement under consideration may fairly be deemed a continuation of the first remark. It was not necessary in giving the information to Johnson to add, "you did not intend it," for, in his view, this was known both to the defendant and himself. But when addressing others who might not know it, he expressed his idea in full: "Johnson shot me, but he did not intend to do it." We think the two remarks taken together are as

clearly part of the res gestæ as if at the moment of the shooting he had said: ''Johnson, you have shot me, but you did not intend it.'' While the weight and value of the evidence were for the jury, that it was very material for the defense can not be questioned, and its exclusion was error.

4. The prosecution introduced evidence for the purpose of showing that deceased and defendant were suitors of the same young lady, and that about a month prior to the shooting the defendant had threatened the deceased in connection with the affair. The defense subsequently offered to prove, as showing the friendly relations between them, that two days prior to the shooting the defendant had taken the part of the deceased and protected him from an assault by a third party, but upon objection the evidence was excluded. The precise ground of the objection is not stated, but we infer from the brief of counsel that it is contended that while it was competent for the defendant to show generally his friendly relations with the deceased, he could not do so by proof of particular acts of kindness.

We think the evidence should have been admitted. The shooting was confessed and the sole issue involved, in the charge of murder, was the intent of the defendant. That the relations of the parties were friendly or hostile was material to this issue, and any fact which would serve to illustrate such relations was relevant. It was admissible for the defendant upon precisely the same grounds that the alleged threat was admissible for the prosecution. Where reputation is the issue, it is true it is generally held that it is not competent to prove particular acts or occurrences showing the disposition or characteristics of a person. But this is the rule in such cases, both because actual character or disposition and reputation are two distinct things, and because while it is presumed that one is always prepared to defend his general reputation, it would be unjust and oppressive to require him to be always prepared to explain and justify every transaction of

his life that might be called in question.   These reasons do not apply here.   It was the actual disposition or state of mind of the defendant that was the subject of inquiry. The best proof of that was his conduct toward the deceased at the time of, or recently before, the shooting. The prosecution had introduced evidence intended to show that defendant about a month prior to the shooting was hostile to the deceased.   It would be a strange rule that would deny to the defendant the right to produce evidence that, since that time, he had shown his friendship for the deceased by a substantial act of kindness. Wharton says: " On a charge of murder, expressions of good will and acts of kindness, on the part of the prisoner toward the deceased, are always considered important evidence, as showing what was his general disposition toward the deceased, and from which the jury may be led to conclude, that his intentions could not have been what the charge imputes."   1 Crim. Law, Sec. 635.

5.  The defendant Johnson offered himself as a witness on his own behalf, and was fully examined by his counsel as to the events at the time of and prior to the shooting. In cross-examination he was questioned and required to answer, over the objection of his counsel, in regard to his movements for a number of days afterward; he was required to state the circumstances of his alleged flight and that during a part of that time he was associated with two men named Lant and Tracy, and that they had killed a man while he was so associated with them.   It is urged that as he was not examined in chief upon any of these matters, this was not proper cross-examination, and that requiring him to testify in regard to his flight was in violation of his constitutional privilege in that he was compelled to testify against himself.

The defendant did not claim his privilege, and we think the constitutional question does not arise.   Great latitude in cross-examination is properly allowed, to test the credibility of the witness.   We have no statute which limits the cross-examination of a defendant when testify-

ing as a witness in his own behalf, and we assume, without deciding that it should be governed by the same general rules as the cross-examination of other witnesses. But the great latitude allowed in cross-examination is for the purpose named; that the attitude of the witness with reference to the case may be fully understood by the jury so that they may judge of the credibility of his testimony. For the accomplishment of this purpose, the cross-examination is largely in the discretion of the trial judge. But the examination upon collateral matters should be limited to that object, and when the facts sought to be elicited serve in no way to illustrate that question and the necessary result, and perhaps the purpose, is simply to prejudice the defendant in the minds of the jury, we think the limit is exceeded. The intimation that the defendant, after the slaying of Strang, was consorting with murderers and was accessory to a particular murder could not fail to be highly prejudicial to him; and that it was relevant or material in the case upon trial of course can not be contended.

6. The court, over the objection of the defendant, gave to the jury the following instruction:

"No. 3. Every person possessed of a sound mind is presumed to intend and contemplate the necessary, and even probable, consequences of his deliberate act; the presumption may in some cases be conclusive, as where a person deliberately points and fires a pistol at a vital point of another's body; here if the latter is killed, the former can not be heard to say that he did not intend to kill him, the intention to kill is conclusively presumed."

This statement of the law can not be sustained. A conclusive presumption can not arise in such a case upon any material question until all the evidence bearing upon it is considered and the proof found to be beyond reasonable doubt. And then, the intent is merely an inference from the facts in evidence, and it is somewhat misleading to speak of it as a presumption at all. The effect of the instruction is to select a part of the evidence bearing upon the question and to inform the jury that it alone is proof

beyond reasonable doubt of the defendant's intention to kill the deceased, and that all other evidence bearing upon the subject is to be excluded from their consideration. To hold that a militiaman in a sham battle, who deliberately points and fires his gun at a vital part of the body of his friend in the opposing line and kills him, can not be heard to say that the ball cartridge found its way into his gun by fraud or misadventure, would be as absurd as it would be barbarous.

It is undoubtedly proper to inform a jury that from certain acts a certain intent may be inferred. It is a logical inference of a fact in question from certain other facts established by the evidence. The inference may be strong or weak when such acts are considered in connection with all the other facts in the case. But by the instruction in this case the jury were in effect, informed that certain acts involved as a matter of law, a certain intent; a statement which is not true. They merely tend to prove such intent. The word deliberately can not cure the defect, unless it is held to include within its meaning the intent to kill. And it would then simply inform the jury that if he fired with the intent to kill, the intent to kill must be presumed. A jury could not reasonably be expected to gather this meaning from the language employed; but they would almost inevitably be led to understand that they were to reject all other evidence bearing upon the intent. The claim of the defendant was that he fired the shot without any intent to injure the deceased. The intent was a material fact in the case. The defendant knew what his intent was and was competent to testify in regard to it. If his statement was true, it was a complete defense to the charge of murder either in the first or second degree. The instruction excluding it from the consideration of the jury was clearly erroneous. For the errors mentioned the judgment will be reversed and the case remanded for a new trial.

*Reversed.*

POTTER, C. J., and KNIGHT, J., concur.