## R. B. EMERT v. STATE.

No. A-3255.   Opinion Filed April 10, 1920.

Rehearing Denied May 4, 1920.

(189 Pac. 195.)

(Syllabus.)

1.   **APPEAL AND ERROR—Review—Necessity of Prejudice—Time of Trial.** The action of a trial court in causing a criminal case to be tried at any particular time is not subject to review on appeal, unless it appears that some substantial right of the defendant in the cause is prejudicially affected thereby.

2.   **APPEAL AND ERROR—Discretion of Trial Court—Change of Venue.** A petition for change of venue under our law is addressed to the sound discretion of the trial court; and, unless it affirmatively appears that the court abused this discretion in such manner as to affect the rights of the party to the litigation complaining of the ruling, a new trial will not be awarded on appeal.

3.   **APPEAL AND ERROR—Necessity for Prejudicial Error—Exclusion of Evidence.** It is not reversible error for the trial court to refuse to permit proof of the reputation of the place where a homicide occurred as being a bootlegging or gambling joint, when such proof does not shed any light whatever upon the issues joined.

4.   **SAME—Conviction—Sufficiency of Evidence.** When the proof contained in the record is such that the guilt of the accused can fairly be deduced therefrom, and no prejudicial error of law is disclosed, the verdict of the jury and judgment of the trial court will not be disturbed upon appeal.

*Appeal from District Court, Tulsa County;*
*N. E. McNeill, Judge.*

R. B. Emert was convicted of manslaughter in the first degree, and appeals. Affirmed.

*E. M. Gallagher* and *Robert F. Blair,* for plaintiff in error.

*S. P. Freeling,* Atty Gen., and *E. L. Fulton,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, R. B. Emert, hereinafter called defendant, was informed against for the murder of Walter Allison, convicted of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary at McAlester for a term of 35 years. To reverse the judgment rendered on the verdict, he prosecutes this appeal.

The defendant filed an application for a change of venue. The court overruled the application, and he excepted. The defendant then filed an application for a continuance, which was overruled, and he excepted.

The evidence is exceedingly voluminous, and we deem it unnecessary for a proper determination of the question

involved in this appeal to recite the same further than as follows: The state introduced Rose Dickerson as a witness, and the defendant objected to her testifying upon the ground that, though she was a married woman and had not been divorced, she had for some time prior to and up to within a few days of the homicide lived with the defendant as his wife, and was so known, and that hence she was his common-law wife. The court overruled the objection, and the defendant excepted, and Rose Dickerson testified: That she was a married woman and had not been divorced. That she married Frank W. Dickerson on May 3, 1913, with whom she lived about three years. That she came to Oklahoma with her said husband and remained here about six months, and then went to Elkhart, Kan., and they lived together until January, 1916, when she left him and returned to Yale, Okla. That she subsequently met the defendant when she was working in a cafe, and about three months thereafter she came to Tulsa with the defendant as his wife, going to the Antler Rooms and registering as husband and wife. That they remained there about two weeks, and that she was introduced by the defendant as his wife. That upon the expiration of their stay in Tulsa, the defendant having been employed by the deceased to work for him at his roadhouse, which was four or five miles from Tulsa, they removed to a house near the roadhouse, and lived there until Friday prior to the homicide, when she and defendant quarreled and defendant left. That quite often she went to Tulsa with the deceased in his car to buy groceries and to have her teeth fixed. That upon returning from Tulsa at a late hour of night with the deceased, she had been slapped by the defendant for so doing. That before defendant left, deceased came to the house in which she and defendant

lived, and told the defendant "there was the rest of his money," and put it on the dresser for him, and the deceased took the defendant in his car to Tulsa. The next time she saw the defendant was when he killed the deceased. About 12 o'clock at night she and deceased were in the roadhouse in a room about 18 or 20 feet long and 10 or 12 feet wide, in which there were no other persons and in which a light was burning. The defendant approached the room on the side from the road and back of the house, in which there was a door. That her attention was attracted when the defendant put his foot in the door. He was wearing his hat low over his eyes, and when she looked he was holding a gun in his hands. That just as he stepped upon the floor, and without having said a word, he shot the deceased, turned and walked south out of the door. That she went out behind him, walking southeast. She did not see either the defendant or deceased after that.

There was also evidence that between 11 and 12 o'clock the night of the homicide, at a home near where the killing occurred, against the consent and protest of the owner thereof, the defendant obtained the gun with which the killing was done; that immediately after the shooting of deceased defendant went to a nearby house and told an inmate thereof that he had shot the deceased; "that deceased had been acting familiar with his wife; that he did not shoot deceased with the intent of killing him, but to show him that he (defendant) would not be imposed upon;" that the defendant sold the gun with which the killing was done to this party and obtained a hat from him, fled the state, and was apprehended in Memphis, Tenn., and returned to Tulsa county for trial.

The defendant testified substantially the same as Rose Dickerson as to the life they lived, and that it was agreed

by and between them that as soon as he was in condition to do so, and as soon as she was divorced, they were to marry; that he slapped her for being out late with deceased, and they had frequent quarrels in consequence of her association with deceased; and admitted that he shot deceased at the time and place testified to by her.

The defendant further testified: That on the night of the homicide he went to the roadhouse of the deceased to secure a settlement, and, upon looking in, saw two officers, Rose Dickerson, and deceased having a conversation about him; that he started to go in, but did not do so, and went across to a negro's house near by and borrowed a gun and returned to the roadhouse about 11 o'clock. That when he returned the two officers and deceased were there, and he looked for and did not see Rose. That he went to the house where they had lived, which was about 100 yards from the "joint," and went in, but did not find her, and as he started out of the door he saw the two officers, accompanied by deceased, outside of the "joint." The officers were preparing to leave, and he saw the deceased take his pistol out. That he was throwing a flashlight upon it. That the officers left in their car, and deceased returned to the "joint," and he looked in and saw Rose and deceased, the deceased having a six-shooter in his hand. That he (defendant) went into the "joint" with the gun in his hand with its muzzle pointing down and his left hand by his side so as not to alarm the deceased. That when he got in deceased was standing about two feet from the south door, that deceased reached for his pistol and defendant told him—"don't go after that gun—take your hands off—" that deceased did not do so and he fired to stop him, not intending to kill him; that he did not at that time see the gun

the deceased had—"he was telling him to take his hands away from it."

There was evidence that immediately after the homicide occurred the pistol of the deceased was found near the scene of the killing, but such evidence does not definitely show whether it was found behind the counter in the "joint" or between the joint and where the dead body of deceased was lying.

The defendant, for the purpose of impeaching Rose Dickerson, offered to prove that some days prior to the homicide she was in Tulsa accompanied by defendant, and that they spent the night together, and on the next morning he purchased a ticket for her, placed her on a train, and started her to her former home; she on her examination as a witness having denied such statements as being true. The court excluded the evidence, and defendant excepted.

The defendant offered to prove the general reputation of the house in which the deceased was killed as being a gambling joint and a place where intoxicating liquors were illegally sold, without showing that such evidence was offered to impeach a witness in any wise connected with said house. The court excluded the offered evidence, and defendant excepted.

Several paragraphs of the instructions given the jury were each excepted to by the defendant.

Timely motion for a new trial was made, overruled, and exceptions saved.

The contention of the defendant that the court committed reversible error by setting and trying the case on July 24, 1917, is, in our opinion, without merit. It does not appear from the record that any right of the defendant was prejudicially affected thereby.

.    The defendant next complains of the action    of    the ·trial court in denying a change of venue.   In presenting a petition for a change of venue, the sound discretion of the trial court is invoked and unless it affirmatively appears that the court abused such discretion the overruling of the petition and denying the change of venue is not reversible error.

It is not agreed that the court committed reversible error in denying a continuance.   A careful consideration of the application for a continuance, including the evidence submitted in support thereof, does not disclose an abuse of discretion upon the part of the trial court in refusing ·he continuance; therefore there was no error in the ruling.

The undenied evidence is that Rose Dickerson was a married woman, and had never been divorced; that she maintained adulterous relations with the defendant and no other, and was a competent witness against him.   The weight and credibility of her testimony was a question solely for the jury.

It is insisted that the court committed reversible error by the exclusion of evidence offered for the purpose of impeaching Rose Dickerson.   The offered impeaching evidence was as to immaterial matters, and the ruling of the court in this respect did not constitute reversible error.

It is also insisted that the court committed reversible error in refusing to permit the defendant to prove that the house where the homicide was committed had the reputation of being a gambling and bootlegging joint, and in support of such contention is cited *Fowler v. State*, 8 Okla. Cr. 130, 126 Pac. 831.   The case cited does not in any wise tend to sustain such contention.   In the case under consideration, the character of the place where the homicide was committed does not appear to be in any way material

to any issue involved. There was therefore no error on the part of the trial court in this ruling.

We have carefully considered each of the paragraphs of the instructions given the jury of which the defendant complains, and find that neither of said paragraphs deprived the defendant of any material, constitutional, or statutory right.

It is not argued in behalf of the defendant that the evidence is insufficient to sustain the conviction had in this case. The record clearly establishes his guilt. It therefore follows that errors, if any, would not work a reversal of this case unless fundamental. *Fowler v. State,* 8 Okla. Cr. 130, 126 Pac. 831.

It is lastly contended that the punishment awarded the defendant is excessive. With this contention we are not in accord. The verdict of the jury and the judgment of the trial court are fully supported by the record.

No reversible error having been pointed out by counsel for defendant, and none appearing to the court upon a thorough examination of the record and all assignments of error, the judgment is affirmed.

Affirmed.

DOYLE, P. J., and MATSON, J., concur.