### ED WARREN v. STATE.

No. A-3926.    Opinion Filed June 4, 1923.

(215 Pac. 635.)

(Syllabus.)

1.  **Homicide—Evidence Supporting Conviction of Murder.** In a prosecution for wife murder by poisoning, evidence held sufficient to support the verdict of conviction and assessing imprisonment for life as the punishment.

2.  **Indictment and Information—Test of Sufficiency.** The true test of the sufficiency of an indictment or information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.

3.  **Appeal and Error—Discretion of Trial Court—Change of Venue.** The granting of a change of venue is under the statute a

matter resting within the sound discretion of the trial court, and this court will not reverse the judgment unless it clearly appears that there has been an abuse of such discretion.

4. **Venue—Denial of Change of Venue Held not Abuse of Discretion.** It is not an abuse of discretion to deny a petition for a change of venue in a capital case, which was based on the alleged prejudice of the minds of the people of the county, caused by newspaper reports of the murder, such newspapers having a large circulation in the county, where the prima facie case made by the affidavits filed by defendant is fully answered and overcome by counter affidavits, and where the subsequent proceedings show that there was no difficulty in securing a fair and impartial jury.

5. **Appeal and Error—Discretion of Trial Court—Continuance.** An application for a continuance is addressed to the sound discretion of the trial court, and, unless it clearly appears that there is abuse of such discretion, this court will not reverse the judgment for refusal to grant a continuance.

6. **Jury—Challenge for Cause—Juror Held Unbiased.** The trial court's refusal to sustain a challenge to a juror for cause will not be disturbed, where it appears from the examination of such juror that he had not talked with any one who purported to know about the case of his own knowledge, but had read newspaper reports, and had no opinion other than that derived from reading newspapers and who stated that he could and would render a fair and impartial verdict upon the evidence.

7. **Evidence—Declaration of Decedent as Part of Res Gestae.** In a prosecution for murder by poisoning, decedent declared in a conversation, an hour before her death, that the defendant gave her a dose of medicine before leaving, about an hour before. Held, that the declaration was admissible, as part of the res gestae.

8. **Same—"Res Gestae" Defined.** Res gestae are the circumstances, facts, and declarations which grow out of the main transaction, or are contemporaneous with it, and serve to illustrate its character, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main transaction might not be properly understood.

Appeal from District Court, LeFlore County; E. F. Lester, Judge.

Ed Warren was convicted of murder, and he appeals. Affirmed.

Lunsford & Bulgin and Neal & Neal, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. Ed Warren, was convicted of the murder of his wife, and in pursuance of the verdict of a jury was sentenced to imprisonment in the penitentiary for life at hard labor. From the judgment he appeals.

Without going into a detailed statement of the testimony, the transcript shows that appellant and his wife, Levergie Warren, were married at Heavener in November, 1914. He was then about 30 years of age and her age was 16 years. She was the owner of about 200 acres of land near Heavener, including her allotment as a Choctaw citizen. It appears that there had been many quarrels between the two due to attentions which appellant bestowed upon certain lewd women in the town of Heavener. Appellant was the beneficiary of two insurance policies, amounting to $5,000, upon the life of his wife. It appears that his wife was in poor health for some time prior to her death. On the 15th day of July, 1920, appellant, his wife, and their two children left their home to visit his wife's sister, Mrs. Stenson, who lived about 8 miles east of Heavener, in LeFlore county. As they passed through Heavener, appellant stopped at a drug store and purchased six three-grain quinine capsules and six atropine tablets.

The next morning, appellant gave his wife one or two of these capsules, and before leaving gave Mrs. Stenson a box containing four capsules, with directions to give his wife a capsule at 9 o'clock and one every three hours until all were taken. Appellant left the Stenson place that morning about 8 o'clock; about 40 minutes after he left his wife complained of being dizzy and said she felt as though she was almost paralyz-

ed; she then laid down on a bed.' At 9 o'clock Mrs. Stenson gave her one of the capsules; shortly afterwards she began to have convulsions and died within an hour. A few days after the burial, suspicion having been aroused of the cause of her death, the grave was opened and a post mortem examination was made and the vital organs were removed from the body. A chemical analysis of the contents of her stomach disclosed a sufficient amount of strychnine to cause death and an analysis of the capsules left in the box, supposed to contain quinine, showed that each of them contained sufficient strychnine to kill a human being.

The proof on the part of the defense showed that appellant had for three or four years preceding the death of his wife, sustained illicit relations with a young woman at Heavener, and that his wife on different occasions had threatened to commit suicide unless her husband ceased his unlawful attentions to this woman.

A witness testified that, while he was working at the Warren house, he found a package of nux vomica and was going to bury it, and Mrs. Warren said, "Give it to me, I will take care of it. Ed has a lot of hounds around here, and I am going to get rid of some of them if he don't" and that she told witness to put it on top of a rafter.

As a witness in his own behalf, defendant testified that on his way to his wife's sister he bought six capsules of quinine and six atropine tablets on the advice of her physician; that he gave his wife a dose that night, and the next morning at 6 o'clock he gave her another capsule, and that was all he ever gave her; that he told her sister, Mrs. Stenson, to give her another capsule at 9 o'clock; that his wife was jealous of his association with other women; and that was the cause of frequent family rackets.

Upon arraignment, appellant interposed a demurrer to the information. The court overruled the demurrer and allowed exception. This ruling is assigned as error.

The information, omitting formal parts and allegations of time and venue, charges:

"That is to say that he, the said Ed Warren, did then and there willfully, without authority of law, feloniously and with a premeditated design to effect the death of one Levergie Warren, give and administer and cause to be given and administered to the said Levergie Warren a certain deadly poison, commonly called strychnine, which the said Levergie Warren then and there received at the hands of the said Ed Warren and by his procurement, and which she, the said Levergie Warren, then and there swallowed, and by reason of which she then and there died; he, the said Ed Warren, then and there well knowing said strychnine to be a deadly poison, and intending then and there and thereby without authority of law, feloniously and with a premeditated design to effect the death of the said Levergie Warren, her the said Levergie Warren did kill and murder, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state."

It is argued that the information is so vague and uncertain as to the manner and means of administering the poison and as to the person by whom given, as to make it impossible for the defendant to prepare his defense, in that it alleges that the said Ed Warren did then and there give and administer (and cause to be given and administered) strychnine which the said Levergie Warren then and there received at the hands of Ed Warren and by his procurement, and that the information is insufficient to charge the crime of murder, because it is not alleged that deceased was induced by appellant to swallow the strychnine, and that all the allegations in the information might be true, and still deceased might have come to her death by her own voluntary act.

Our Code provides:

"The indictment or information must be direct and certain as it regards:

"First.   The party charged.

"Second.   The offense charged.

"Third.   The particular   circumstances of the   offense charged, when they are necessary to constitute a complete offense." Comp. Stats. 1921, § 2556.

Our Code further provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Comp. Stats. 1921, § 2564.

We think the information in this case sufficient under the requirements of these sections of the Code.

The true test of the sufficiency of an information is not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet.

The particular circumstances of the offense are sufficiently set out in alleging that he did give and administer, and cause to be given and administered, a certain deadly poison, commonly called strychnine, he then well knowing said strychnine to be a deadly poison and intending then and there and thereby without authority of law, feloniously and with a premeditated design, to effect the death of said deceased, and the phrase, "and caused to be given and administered" is mere redundance.   If the capsule administered by the sister of the deceased by direction of appellant, said sister fully believing

and relying on the statement of appellant that the same was quinine, caused the death, then the poison was administered to deceased by appellant, using deceased's sister as the instrument by which the poison was administered.

In our opinion the information sufficiently charges the crime of murder, and the demurrer thereto was properly overruled.

The second assignment is "error of the court in refusing to grant a change of venue." The application was supported by the affidavit of appellant and 36 residents of LeFlore county. The ground set up in the application was that the minds of the inhabitants of LeFlore county were so prejudiced against the defendant that he cannot obtain a fair and impartial trial in said county; that at the time that he was charged with the murder of his wife he was being prosecuted for larceny of livestock and had incurred the enmity of certain influential citizens of the town of Heavener; that, because of this charge, discussion derogatory of the defendant's personal character had been indulged in in the vicinity of Heavener, and other towns in LeFlore county; that certain newspapers of the county, together with newspapers daily circulated throughout the county, carried Associated Press dispatches and circulated throughout the county the facts that the defendant had been charged with crime to such an extent that the defendant was in great danger of being lynched by an uprising of the citizenship; that the minds of the people of the county became so inflamed that mob violence was emminent, and the sheriff of said county removed defendant from the county jail to the state penitentiary at McAlester for safekeeping.

It is also alleged that persons unfriendly to the defendant, relatives of his deceased wife, had been circulating petitions and collecting money in the county, to be used in the prosecu-

tion of the defendant; that said persons used every effort to create sentiment and opinion prejudicial to the defendant.

The state resisting the application filed the affidavit of the county attorney, which, omitting formal parts, reads:

"That LeFlore county is comprised of territory aggregating 1,731 square miles, and has a population of approximately fifty thousand (50,000) people; that if there is any prejudice in said county against said defendant, which the county attorney here specifically denies, said prejudice is not general throughout the county, and does not extend generally to the persons subject to jury service, but prevails only in the vicinity of Heavener, and within a radius of a very few miles at that place, and that the percentage of population of said county residing in the vicinity of Heavener, is very small, and that the number of persons affected by prejudice against said defendant subject to jury service is very small, if any at all; that a fair and impartial jury for the trial of this cause can be conveniently obtained in LeFlore county, and of all this proof is here offered.

"D. C. McCurtain, County Attorney."

The state filed more than 50 affidavits of citizens of the county, each affiant stating that he did not know of any prejudice existing in the minds of the people living in his vicinity against Ed Warren, and that jurors could be procured in his community, who are in no way prejudiced against the defendant.

Counsel for appellant moved to strike from the files all controverting affidavits filed on the part of the state, on the ground that the same are not controverting affidavits within the meaning of the statute, which motion was overruled and exception allowed.

Thereupon the court permitted appellant to call certain witnesses in support of his application, and, after hearing the proof offered in support of said application, and proof offered

by the county attorney, the court denied the application and allowed an exception.

Counsel for appellant contends that the court erred in overruling the aforesaid motion and in refusing to grant a change of venue.

The statute provides that a change of venue may be had in any criminal cause pending in the district court on the application of the defendant by petition setting forth the facts verified by affidavit, and the truth of the allegations in such petition to be supported by the affidavits of at least three credible persons who reside in said county.

It further provides that:

"The county attorney may introduce counter affidavits to show that the persons making affidavits in support of the application in open court in regard to the truth of said applica- necessary, and may examine the witnesses in support of said application in open court in regard to the truth of said application; and if it be made to appear by the affidavits and examination of witnesses that a fair and impartial trial cannot be had in the county, a change shall be granted and the order made by the court." Comp. Stats. 1921, § 2628.

The affidavits filed by the state in denial of the allegations of the application tended to show that there was no such state of feeling generally prevailing throughout the county as would prevent the defendant from having a fair and impartial trial therein, or would even make it difficult to obtain an impartial jury for the trial.

It has been uniformly held by this court that the granting of a change of venue is under the statute a matter resting within the sound discretion of the trial court, and, unless it clearly appears that there has been an abuse of such discretion, this court will not reverse the judgment for the failure of the trial court to grant a change of venue. Turner v. State, 4 Okla. Cr.

164, 111 Pac. 988; Starr v. State, 5 Okla. Cr. 440, 115 Pac. 356; Watson v. State, 9 Okla. Cr. 1, 130 Pac. 816; Tegeler v. State, 9 Okla. Cr. 138, 130 Pac. 1164; Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719; Maddox v. State, 12 Okla. Cr. 462, 158 Pac. 883; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341; Browder v. State, 16 Okla. Cr. 43, 180 Pac. 571; Emert v. State, 17 Okla. Cr. 406, 189 Pac. 195.

In this case the subsequent proceedings show that there was no difficulty in securing a jury and that the jury obtained was an absolutely fair and impartial jury.

Considering all the facts and circumstances disclosed by the evidence we cannot say that the court erred in refusing to grant the change of venue.

The next error assigned is the overruling of the motion by defendant for a continuance. When the case was called for trial the defendant filed an application for continuance on the ground that counsel for defendant had been so occupied with other important cases pending in the district court of Le Flore county to such an extent that the time of both law firms was fully engaged from the opening of the term, and that counsel did not have sufficient time and opportunity to prepare the case for trial.

A defendant, as a general rule, should not be compelled to go to trial until he has had a reasonable time to prepare his case for trial; but in this case the alleged offense was committed on July 16, 1921, the defendant was arrested and had or waived a preliminary examination, the information was filed in the district court August 2, 1921, and on the same day defendant was arraigned. On August 4th, he entered his plea of not guilty. Thereupon the court set the case for trial on August 16th, and there was no objection made to this setting

of the case.

The question of granting or refusing a continuance is ordinarily discretionary with the trial court, and we fail to find anything in the record that would warrant this court in holding that there was any abuse of the discretion committed by the trial judge in this matter.

The fourth error assigned is the overruling of the challenge on the part of the defendant to the juror Derryberry, who upon his voir dire stated that he had heard nothing purporting to be facts except newspaper reports; he also stated that he did not have any fixed opinion as to the guilt or innocence of the defendant, nor did he have any bias or prejudice against the defendant, and knew nothing to prevent him from rendering a fair and impartial verdict.

There appears no good reason for not adhering to the rule approved in Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719. The question presented is so thoroughly discussed in the opinion in that case that we can add nothing to what was there said. The challenge was properly overruled.

The remaining assignment of error is based on rulings of the court in admitting, over the objection of the defendant, certain parts of the testimony of Mrs. Nettie Stenson and Mrs. Lee Taylor. Mr. Stenson testified:

"When the clock struck 9 I said, 'Vergie, it is medicine time,' and I walked over and got the medicine and gave it to her. She said, 'You gave my medicine too soon.' I said, 'Ed said he gave you a dose at 6 and it comes every three hours,' and she said, 'Yes; but he gave me a dose just before he started.'"

Mrs. Taylor testified:

"The clock struck 9 just as she laid down on the bed, and

she said, 'Nettie, it is my medicine time,' and Nettie came on in and gave her the medicine and after Nettie gave her the medicine she said, 'Nettie, you gave me the medicine too soon.' Nettie said, 'No; I reckon not it is 9 o'clock, and Ed gave you a dose at 6 and said for me) to give you a dose at 9 and every three hours' and she said, 'Surely not, he gave me a dose just before he started.' "

It is argued that the trial court committed prejudicial error in permitting these witnesses to testify to declarations made by deceased as to what. the defendant had done previous to that time, and that deceased's statement to the effect that the defendant gave her a dose of medicine when leaving about an hour before, was a mere narrative of a past event and purely hearsay, and was not admissible under any exception to the general rule, citing Field v. State, 57 Miss. 474, 34 Am. Rep. 476.

The general rule which excludes hearsay evidence is subject to many well-recognized modifications and exceptions, one of which is that where evidence of a declaration is admissible, a person present may state what he heard said. In many cases testimony of this character has been admitted, as it was in this case, on the theory that it is res gestae.

In Commonwealth v. McPike, 3 Cush. (Mass.) 181, 50 Am. Dec. 727, the defendant was charged with killing his wife. It appeared that the deceased ran upstairs from her own room in the night crying, "Murder!" and bleeding. Another wo-. man, into whose room she was admitted, went at her request for a physician. A third person who heard her crying went for the watchman, and on his return proceeded to the room where she was. He found her on the floor bleeding profusely. She said the defendant had stabbed her. The defendant's counsel objected to the admission of this declaration in evidence. The objection was overruled. The Supreme Court of

Massachusetts held that the evidence was properly admitted. It was said that the declaration was "of the nature of res gestae" and that the time when it was made was so recent after the injury was inflicted as to justify receiving it upon that ground.

Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, was an action upon a policy of insurance. The question was as to whether the deceased, Mosley, came to his death by an accident inflicting personal injury, or whether he died of disease. To show that his death was caused by an injury received in consequence of an accident, his wife and son were called and testified that he had left his bed in the night and that when he came back he said he had fallen downstairs and complained of being hurt. He died in a short time thereafter, and his death was believed to be the result of the injury he received when falling. Upon an extended review of the authorities, the Supreme Court of the United States held that, although the statements of Mosley were not admissible in evidence as dying declarations, yet they were properly receivable as a part of the res gestae. Mr. Justice Swayne, in the opinion cited, Com. v. McPike, supra, with approval and after referring to other cases, said:

"In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both; but there is no ground of objection to one that does not exist equally as to the other. To reject the verbal fact would not unfrequently have the same effect as to strike out the controlling member from a sentence, or the controlling sentence from its context. * * * Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact. The res gestae are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is

to extend rather than to narrow the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority. We think it was properly applied in the court below. In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. Their probative force would not be questioned. Unlike much other evidence, equally cogent for all the purposes of moral conviction, they have the sanction of law as well as of reason. The want of this concurrence in the law is often deeply to be regretted. The weight of this reflection, in reference to the case under consideration, is increased by the fact, that what was said could not be received as 'dying declarations,' although the person who made them was dead, and hence could not be called as a witness.''

See, also, State v. Wilson, 157 Iowa, 713, 141 N. W. 344; State v. Alton, 105 Minn. 410, 117 N. W. 619, 15 Ann. Cas. 806; Johnson v. State, 8 Wyo. 494, 58 Pac. 762; State v. Martin, 124 Mo. 529, 28 S. W. 12; Lewis v. State, 29 Tex. App. 201, 15 S. W. 642, 25 Am. St. Rep. 720.

We are satisfied that the testimony of these witnesses, including the statement accredited to deceased that the defendant gave her a dose of medicine just before leaving, was properly admitted as a part of the res gestae.

Where the inquiry is into the nature and character of a certain transaction, not only what was done, says Mr. Roscoe, but also what was said by those present during the continuance of the transaction, is admissible for the purpose of illustrating its peculiar character and circumstances. Roscoe, Ev. 25.

Res gestae are the circumstances, facts, and declarations which grow out of the main transaction or are contemporaneous with it, and serve to illustrate its character, including

acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main transaction might not be properly understood.

It may be well for us to say here that we are inclined to think that the statement in question was also admissible under the familiar rule that all parts of a conversation bearing on the subject in controversy must be taken together.

Upon the whole case, it appears to us that the defendant had a fair trial, and that the ends of justice, under the law, were no more than satisfied by the judgment of conviction appealed from. The judgment of the district court of Le Flore county herein is therefore affirmed.

MATSON, P. J., and BESSEY, J., concur.