# WALTER COFFEY v. STATE.

No. A-5309.  Opinion Filed Jan. 22, 1927.
Rehearing Denied Sept. 6, 1927.
(258 Pac. 923.)

Mathers & Coakley and R. C. Roland, for plaintiff in error.

Geo. F. Short, Atty. Gen., and J. Berry King, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Carter county on a charge of manslaughter in the first degree, and sentenced to a term of 15 years in the state penitentiary.

A brief statement of facts, as gathered from the record, is about as follows: On the night of February 1, 1924, defendant, who was a constable, attended a dance at the residence of one Hanway, near the little village of Cheek. There was evidence tending to prove he was intoxicated, but this was sharply refuted. Arch Carpenter, who lived at Ardmore, drove an automobile from that place to the northern part of Love county on a business transaction, and had with him in the car Ott Gould, the deceased, Gould's wife, and her mother, Mrs. Wheeler. Returning from their business trip, they stopped for a while at the dance at Hanway's and then drove on toward Ardmore. Carpenter was driving, and had in the front seat with him Mrs. Wheeler. Gould and his wife were in the back seat. About the time they left the Hanway's, there was some shooting south of the place of the dance, and defendant preceded the car of Carpenter to the road intersection north of Hanway's. As the Carpenter car came to the intersection, defendant stood at the intersection with his hat in one hand and his pistol in the other, waved and order them to halt. The car did not stop, but turned east at this road intersection, and, as it passed, defendant fired four or five times, one shot of which passed through the head of Gould, killing him instantly. Two or three other shots struck the automobile. The acquaintance between deceased and defendant was slight, and no personal element appears to

have entered into the homicide. Defendant admits firing the shots, but his testimony is that, before leaving the house of Hanway's, he heard some one shooting on the highway, and that he followed what he thought was the car from which the shooting was done and arrived at the crossroads, intending to stop the car and search it for pistols and whisky; that he had his hat in his left hand and gun in his right hand and signaled for the car to stop and ordered it to halt; that the car speeded up and drove faster, and that he then fired four or five shots with his gun pointed toward the ground, intending to stop the car; that none of the shots were fired toward the Carpenter car.

The assignments of error presented may he grouped under three heads: First. Refusal of the court to grant a continuance. Second. Failure of the court to grant a change of venue. Third. Refusal to give requested instructions and error in certain instructions given.

The application for a change of venue is voluminous, containing a great number of affidavits filed for defendant, and a great number filed by the state contesting the application. Some prior difficulty in which the defendant had figured and the killing of a nephew of defendant some time before the trial is injected. The publication of the details of this offense by the press of Carter county, is also claimed to be prejudicial to defendant. The Ku Klux Klan parades across the pages and the statement that defendant is an "anti" is urged. We have examined this showing with care, and deem it unnecessary to recite the record upon these matters in detail. It is well settled that the granting or refusal of a change of venue is within the sound discretion of the trial court, and his ruling denying an application for a change of venue will not be disturbed by this court unless it is made to appear there was an abuse of discretion, the presumption being that a defendant can have a fair

trial in the county in which the offense is charged to have been committed and the burden to overcome this presumption is on him. It is also held, where it is claimed in such application and supporting affidavits that, by reason of newspaper reports, or otherwise, the minds of the people of the county are prejudiced against a defendant, it is not an abuse of discretion to overrule such application, if such prima facie showing is answered and overcome by counter affidavits on the part of the state. See generally Maddox v. State, 12 Okla. Cr. 462, 158 P. 883; Smith v. State, 14 Okla. Cr. 348, 171 P. 341; Emert v. State, 17 Okla. Cr. 406, 189 P. 195; Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Scott v. State, 29 Okla. Cr. 324, 233 P. 776; Johnson v. State, 35 Okla. Cr. 212, 249 P. 971.

Defendant was represented in the trial court by Mathers & Coakley, and R. C. Roland, members of the bar of Carter county. Before entering upon the trial, an application for continuance was filed on account of the absence of C. A. Coakley, a member of the firm of Mathers & Coakley, who had been subpoenaed to Washington City upon some federal matter. It is here contended that the denial of this application was error. An application for a continuance is addressed to the sound discretion of the trial court, and a refusal of such application is not error unless there was an abuse of such discretion. In the case of Payne v. State, 10 Okla. Cr. 314, 136 P. 201, it is said that an application for continuance on account of the absence of leading counsel is properly denied where defendant is duly represented by other counsel. To reverse a case on such grounds would be to place the power of continuance within the control of counsel. The overruling of the application for a continuance was not error. Cross v. State, 11 Okla. Cr. 118, 143 P. 202; Reed v. State, 14 Okla. Cr. 651, 174 P. 800.

Under the third grouping of errors assigned, com-

plaint is made of the court's refusal to give eight requested instructions, and the giving of the court's instructions Nos. 3, 4, 5, 6, 7, and 9. These separate requests and exceptions will not be severally discussed. Among them is the refusal of the court to submit an instruction on excusable homicide. This degree of homicide is defined by section 1752, Comp. Stat. 1921, and, under the definition there given, an instruction submitting excusable homicide is not applicable. The request was properly refused. Hallmark v. State, 22 Okla. Cr. 422, 212 P. 322; Ussaery v. State, 22 Okla. Cr. 397, 212 P. 137.

Under this assignment it is strongly urged that defendant was entitled to have given his requested instruction submitting manslaughter in the second degree as defined by section 1745, Comp. Stat. 1921, which was refused by the court. It is the contention that the testimony of the defendant and of various other witnesses, that the shots were fired downward and not at the automobile in which deceased was riding, renders the homicide no more than manslaughter in the second degree. Defendant was a peace officer, and it is his theory that he was justified under the law in seeking to stop the car in which deceased was riding. Under the statute, a peace officer may, without a warrant, arrest a person for a public offense committed or attempted in his presence, or where a felony has been committed, although not in his presence, or where he has reasonable cause for believing the person arrested to have committed a felony, though not in his presence, or upon a charge made upon reasonable cause of the commission of a felony. Section 2471, Comp. Stat. 1921.

Under the record before us, there is no claim that deceased or any one in the car with him had committed a felony, or that any felony had been committed, or that there was any reasonable cause for believing deceased

or any one in the car had committed a felony, or that any charge of the commission of a felony had been made to defendant. Nor is it, nor can it be contended that deceased, or any one in the car with him committed or attempted to commit any offense in the presence of defendant as a peace officer. At the time of the homicide, deceased was wholly without fault and defendant wholly without any right to arrest him, and his act in attempting to stop the car upon the highway was without authority of law.

The right of a peace officer to arrest, with or without a warrant, has been several times considered by this court. In the case of Roberson v. U. S., 4 Okla. Cr. 336, 111 P. 984, considering the statute of Indian Territory prior to statehood, which is substantially the same as our statute, it was said:

"An officer has no right, in the absence of resistance or flight, to use any force or violence upon one whom he is arresting for any offense; and also has no right to use a deadly weapon upon one whom he is attempting to arrest for a misdemeanor and who does not resist but merely flees."

In the case of Sharp v. U. S., 6 Okla. Cr. 350, 118 P. 675, also based on the statutes of Indian Territory, it was said:

"A peace officer has no lawful right to shoot and kill a person that is attempting to escape arrest for a minor offense, by running away, and, if he does so, he will be guilty of murder or manslaughter as the case may be."

In the case of Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375, it was said:

"A peace officer making an arrest without authority to do so occupies the same relations to the party arrested that any other private citizen would. He is a trespasser who has no right to detain the person, and hence no right

to prevent an escape, and in preventing an escape he is still a trespasser."

Defendant contends that if, at the time he fired the fatal shot, he did not fire at or towards the car in which deceased was, but in another direction for the purpose of halting the car, even though a trespasser in doing so, his offense would be no more than manslaughter in the second degree. This contention, however, we think is absolutely refuted by the physical facts. The evidence is that the bullet wound ranged almost on a level through the head of deceased, and that there were at least three and possibly four of the other bullets fired which struck the car. It might be reasonable to assume that, defendant firing into the roadway or in some direction other than towards the car, a bullet might have ricochetted and killed deceased, but that three or four out of four or five bullets would do so as the car sped along the highway is wholly unreasonable. These physical facts refute his testimony, and the court was not required to ignore such physical facts and give an instruction contrary to them. Grandsen v. State, 12 Okla. Cr. 417, 158 P. 157, and authorities cited.

We are in full accord with the desire of the peace officers of this state to preserve order, apprehend offenders, and protect the law-abiding. There has been, however, in many quarters an erroneous belief among petit peace officers that they may lawfully shoot one guilty of a misdemeanor if he fails to stop when commanded, and in some cases this belief extends to the right to shoot one merely suspected of being guilty of a misdemeanor. The shooting here was wholly without justification. We find no error which materially prejudices the substantial rights of the defendant.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.

EDWARDS, J. Since the opinion in this case was rendered, a petition for rehearing was duly filed in this court, and it is strongly urged that under all the facts the punishment is excessive. The record discloses that defendant was a peace officer, and the offense charged arose while he was acting in that capacity. While the offense is a serious one, and his ignorance of his duty almost inexcusable, there was no intent on the part of defendant to violate the law. We have given his contention consideration, and have reached the conclusion that under all the circumstances justice requires that the punishment be reduced from 15 years in the state penitentiary to 10 years, and, as modified, the sentence is. affirmed.

The petition for rehearing is denied.

DOYLE, P. J., and DAVENPORT, J., concur.